NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0690n.06

No. 13-2410

FILED
Sep 04, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ARLYS WILLIAMS,                          )
                                         )
        Plaintiff-Appellant,             )
                                         )      On Appeal from the United States
v.                                       )      District Court for the Eastern
                                         )      District of Michigan
TARGET CORPORATION, fka Dayton           )
Hudson Corp; EXECUTIVE LONG              )
TERM DISABILITY PLAN;                    )
HARTFORD LIFE AND ACCIDENT               )
INSURANCE COMPANY,                       )
                                         )
        Defendants-Appellees.            )
_____/

Before:  GUY, KETHLEDGE, and STRANCH, Circuit Judges.

PER CURIAM.

I.

In 1997, Plaintiff Arlys Williams was diagnosed with fibromyalgia and chronic fatigue syndrome. Based on this diagnosis, Williams was approved for long term disability benefits ("LTD Benefits") under her employer Dayton Hudson's long term disability plan ("Plan"). At the time, Dayton Hudson self-insured the Plan. Dayton Hudson later became known as Target Corporation, a Defendant in this action.

On January 1, 2010, Defendant Hartford Life and Accident Insurance Company ("Hartford") began insuring the Plan under a buy-out insurance policy and also began acting as the Plan's claims administrator. Hartford then began a review of Williams's file to determine whether she was still disabled under the Plan's terms and still entitled to her LTD Benefits.

As a part of this review, Hartford conducted an Employability Analysis Report ("EAR"), which concluded that Williams' ailments did not prevent her from performing the occupation of an Accounting Clerks Supervisor. For reasons explained below, that conclusion meant that Williams no longer met the Plan's definition of "disability." As a result, Hartford terminated Williams' LTD Benefits. Williams appealed the termination and, after conducting a review, Hartford upheld its decision.

Williams then appealed Hartford's termination pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). The parties filed cross-motions for judgment on the administrative record and, after reviewing the briefing and the record, the district court granted Hartford's motion applying an arbitrary and capricious standard of review. Williams filed this timely appeal.

The bulk of Williams's argument on appeal claims that the district court erred in applying an arbitrary and capricious standard of review rather than reviewing her case de novo. We do not address Williams's argument because, regardless of the standard of review we apply and for the reasons described below, there is insufficient information in the administrative record to ascertain whether Williams still met the Plan's definition of

"disability."  As a result, we **REMAND** the case so that the administrative record can be developed further.

## II.

The parties agree that for Williams's condition to satisfy the Plan's definition of "disability," it must prevent her from engaging in any occupation that would provide at least 128% of her LTD Benefits.  To satisfy this 128% requirement, a suitable alternative job for Williams must pay her at least $3,724.80 per month.  Hartford's EAR attempts to determine whether, based on Williams's "current functionality, as well as [her] education, training and work experience," there is any occupation prevalent in the national economy that Williams could perform that would meet the 128% wage requirement.

The EAR concluded that there was one job that met the 128% criterion: "Supervisor, Accounting Clerks," which the EAR indicates has a median monthly wage of $3,908.67.  According to the EAR, this number is based on the "Oasys May 2009 median wage data," although there is no further information on how the wage data is computed.[1]  The EAR does cite wage data from both the Census and the Occupational Employment Statistics survey ("OES Survey"), although it is unclear if and how that data affect the "Oasys May 2009 median wage data."

The cited OES Survey data and the Census data appear to be rather broad.  Both data sets analyze the wages of "First-Line Supervisors/Managers of Office and

---

[1] The EAR does make clear that the OASYS classification system "cross references an individual's qualifications profile with 12,741 occupations classified by the U.S. Department of Labor in the 1991 Dictionary of Occupational Titles."  Although this is helpful to understand the job matching and classification system, it does not identify how the wage data is actually computed.

Administrative Support." As indicated in the EAR, that occupational classification includes 106 occupational titles, one of which is "Supervisor, Accounting Clerks." Neither data set describes the average wage for the specific occupation of "Supervisor, Accounting Clerks." To complicate matters, the cited OES Survey data and the Census data paint significantly different pictures of the average wages for that occupational classification; the Census data indicate monthly median wages that fall short of the 128% wage requirement while the OES Survey data indicate a monthly wage that could exceed the 128% wage requirement.

We are left with more questions than answers. The parties and the district court assumed that the EAR's $3,908.67 wage estimate was based on Department of Labor data. This assumption may be correct but there is no clear evidence in the administrative record that supports it or otherwise explains *how* OASYS computed its wage data. Specifically, even if OASYS used Department of Labor data, we do not know what data was used. Did OASYS simply look at wage data for the occupational classification of "First-Line Supervisors/Managers of Office and Administrative Support" (such as the data cited in the EAR) or did it consider wage data that was specific to the occupational title "Supervisor, Accounting Clerks"?

Williams asks us to accept wage data from an internet article (which cites CareerBuilders.com) estimating the average monthly salary for an Accounting Clerks Supervisor at $3,453 – which is more than $250 short of the 128% monthly wage requirement. We cannot evaluate this evidence relative to the OASYS data, whether

under the highly deferential "arbitrary and capricious" standard of review or the more demanding "de novo" standard, without knowing how the OASYS data was computed. As a result, we remand this case to the Hartford administrator so that the factual record may be completed to determine how OASYS computed its wage data. *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) (noting that an incomplete factual record provides a basis to remand the case to the plan administrator).

The district court's judgment is **VACATED** and we **REMAND** this case to the district court with instructions that it **REMAND** the case to Hartford's plan administrator so that the record may be developed in accordance with this opinion. Upon completion of such proceeding, the parties shall transmit the supplemented administrative record to the district court so that the district court judge may review the parties' remaining arguments (as reflected in their appeal briefs) in light of the supplemented record. The district court judge is free to revisit all of his previous conclusions in light of the supplemented record.