RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD E. DAVIS,

*Plaintiff-Appellant*,

*v.*

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,

*Defendant-Appellee*.

No. 19-6091

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:14-cv-00507—Claria Horn Boom, District Judge.

Decided and Filed:  November 19, 2020

Before:  COLE, Chief Judge; DONALD and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Michael D. Grabhorn, Andrew M. Grabhorn, GRABHORN LAW | INSURED RIGHTS®, Louisville, Kentucky, for Appellant.  William B. Wahlheim, Jr., John C. Neiman, MAYNARD COOPER & GALE, P.C., Birmingham, Alabama, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge.  Hartford Life & Accident Insurance Company provided disability benefits to Richard E. Davis under an insurance policy governed by the Employee Retirement Income Security Act of 1974 (ERISA).  After Hartford Life determined that Davis no longer qualified as disabled under the policy, it terminated his benefits.  Davis filed

suit, bringing claims for breach of contract, breach of fiduciary duty, and disgorgement under 29 U.S.C. § 1132(a). The district court resolved all three claims in Hartford Life's favor. We now affirm.

## BACKGROUND

*Initial Award Of Long-Term Disability Benefits*. Davis worked for U.S. Bank as a Senior Application Developer. As part of his employment, Davis was insured under a long-term disability policy issued by Hartford Life. U.S. Bank vested Hartford Life with "full discretion and authority to determine eligibility for benefits" under its policy.

Beginning in October 2011, Davis missed work due to chronic back pain, neuropathy, and fatigue caused by multiple myeloma. Davis sought both short- and long-term benefits pursuant to his disability policy. Relying on the opinion of Davis's oncologist, Dr. Reddy, Hartford Life approved Davis's claim for short-term disability benefits through April 17, 2012.

The medical evidence, however, was less certain with respect to Davis's claim for long-term benefits. During visits by Davis between April 2011 and January 2012, Reddy had noted that Davis was in remission and, at times, capable of light-level work. Yet Reddy reported to Hartford Life in March 2012 that, at least until September, Davis could not work and could only sit, stand, and walk up to four hours per day. A Hartford Life nurse, upon reviewing Davis's records, noted that she anticipated Davis could return to work full-time by the end of his short-term disability period. But just as that period was set to expire, Reddy reported that Davis could only sit, stand, or walk for 30 minutes at a time. Unclear why Davis's condition had not improved, Hartford Life obtained notes from Davis's orthopedist, which indicated that Davis continued to report back pain and receive physical therapy. Reviewing Davis's file again, a Hartford nurse agreed that it is was reasonable for Davis to finish his latest round of physical therapy before returning to work, and that he should be reevaluated in September.

In June, Hartford Life approved Davis's application for long-term disability benefits, retroactive to April. The approval letter explained that Davis would be considered "disabled" for 24 months if, during that time, he was unable to perform one or more essential job duties. Davis could continue to receive benefits beyond that time if he was unable to perform one or more of

the essential duties of "Any Occupation," meaning "an occupation for which [he was] qualified by education, training or experience" and that has comparable "earnings potential."

*Continued Monitoring*.  In September, Reddy reported that Davis's sitting, standing, and walking restrictions were necessary for at least another six months.  Reddy's notes, however, indicated that Davis was clinically stable and able to perform "light or sedentary work."  In light of this apparent inconsistency, Hartford Life referred Davis's claim to its investigative unit.  After surveilling and interviewing Davis, an investigator found "discrepancies between the claimant's reported limitations and what he is observed doing on surveillance."  A Hartford Life nurse sent the investigator's report to Davis's treating physicians, requesting their opinions as to whether Davis was physically capable of working an eight-hour day with restrictions.  Davis's primary care physician and neurologist both concluded that Davis could work full-time under the described conditions.  Reddy disagreed, but would not answer follow-up questions from Hartford Life regarding the other doctors' conflicting opinions.

In view of these differing opinions, Hartford Life referred Davis's file to a vendor for an independent review.  The vendor retained Dr. Wener, an orthopedic surgeon, to study the file and perform an examination.  Wener reported that Davis was physically capable of sitting, standing, and walking for one hour at a time, respectively, for up to three hours each per eight-hour workday.  In an addendum, Wener indicated that Davis could perform "light duty or sedentary work" within those restrictions for an eight-hour day.  Hartford Life sent Wener's report to Reddy, seeking his feedback.  Once again, Reddy did not respond.

*Termination of Benefits*.  Hartford Life developed an Employability Analysis Report based on Davis's work and educational history and his functional capabilities, as determined by Davis's primary care physician, neurologist, and Wener.  The report identified five occupations at the "closest" or "good" level (indicating the ease of transferability of his skills) that were suitable for Davis and that met the policy's "Any Occupation" definition.  Hartford Life in turn notified Davis in December 2013 that he would no longer qualify as disabled under the policy, meaning he would be ineligible for benefits after April 17, 2014.

Davis appealed the decision.  He provided a statement and records from Reddy indicating that Davis had multiple myeloma without remission, fatigue with mild anemia, and chronic pain, and that Davis was capable of sitting, standing, and walking for a total of one hour per day. Reddy's records, however, included a November 2013 note indicating that Davis's multiple myeloma had "been quite stable to date," and that Davis had "not had any increase in pain."  And a March 2014 record stated that Davis's "multiple myeloma continues to be stable," his anemia had normalized, and his back pain, though continuing, was being controlled with treatment.

In light of this conflicting information, Hartford Life obtained an additional review of Davis's case primarily through a pain management specialist retained by a vendor.  As part of that review, Reddy informed the specialist that he did not object to Davis resuming full-time sedentary or light-level work.  The specialist ultimately concluded that "there was no specific medical condition that precluded [Davis] from working at least at the full time sedentary occupational level."  He believed that Davis could sit without restriction but should be allowed to stand or walk around for five to ten minutes after sitting for an hour.  An internal medicine specialist who also reviewed Davis's records likewise concluded that "[b]ased on the information provided for review, [Davis's] history of multiple myeloma would not require functional limitations."

Hartford Life updated Davis's Employability Analysis Report with these additional opinions.  The new report identified five occupations at the "closest" level—including Davis's previous occupations—that aligned with Davis's functional capabilities and the policy's "Any Occupation" definition.  Hartford Life then notified Davis that it was upholding its termination decision.

*Procedural History*.  Davis filed suit against Hartford Life, bringing claims for breach of contract to recover benefits under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under § 1132(a)(3), and disgorgement under §§ 1132(a)(1)(B) and (a)(3).  The district court granted Hartford Life's motion for judgment on the pleadings as to Davis's claims for breach of fiduciary duty and disgorgement.  *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2016 WL 1574151, at *1 (W.D. Ky. Apr. 19, 2016).  The district court later granted summary

judgment to Hartford Life on the remaining breach of contract claim. *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-507-CHB, 2019 WL 4017238, at *10 (W.D. Ky. Aug. 26, 2019).

## ANALYSIS

On appeal, Davis claims that the district court erred in three respects. One, by applying an incorrect legal standard to his contract claim. Two, by upholding his benefits termination. And three, by dismissing his fiduciary duty and disgorgement claims. We take those arguments in turn, reviewing the district court's legal determinations de novo and its factual findings for clear error. *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 565–66 (6th Cir. 2013).

*Standard Of Review For The Breach Of Contract Claim.* The standard of review in this ERISA setting turns on the circumstances surrounding the benefits determination. Courts review a plan administrator's termination of benefits de novo unless the plan grants the administrator "discretionary authority to determine eligibility for benefits or construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants such authority, courts utilize an arbitrary-and-capricious standard, *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018) (quoting *Firestone*, 489 U.S. at 111, 115), unless the benefits decision was made by an entity other than the authorized administrator, in which case the standard of review reverts to de novo, *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009) (quoting *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001)). Here, the parties agree that Davis's policy granted discretionary authority to Hartford Life. The parties dispute, however, whether Hartford Life exercised its discretionary authority in making that determination. The district court found that Hartford Life did, in fact, exercise its authority in terminating Davis's benefits, and applied an arbitrary-and-capricious (rather than de novo) standard in reviewing Hartford Life's decision. *Davis*, 2019 WL 4017238, at *7.

Davis contends that Hartford Fire Insurance Company—a separate subsidiary of Hartford Financial Services Group, the point company for both Hartford Life and Hartford Fire—decided to terminate his benefits, not Hartford Life. As an entity incorporated under Connecticut law, Hartford Life acts through its employees and agents. *Vaughn v. United States*, 635 F. App'x

216, 220 (6th Cir. 2015); *In re NM Holdings Co., LLC*, 622 F.3d 613, 620 (6th Cir. 2010) (referring to Michigan law); *Harp v. King*, 835 A.2d 953, 971 (Conn. 2003) (citation omitted). And, says Davis, because Hartford Life does not have employees, the decisionmakers who terminated Davis's benefits did not act under the supervision of anyone employed by Hartford Life. Rather, he contends, the decisionmakers were paid by, and employees of, Hartford Fire. It follows, Davis argues, that because his policy vested discretionary authority solely in Hartford Life—and barred delegating that authority to Hartford Fire—the district court should have reviewed the decision to terminate his benefits de novo.

Davis's argument, however, does not add up as a factual matter. True, Hartford Life acknowledges, the decisionmakers here, like all employees of Hartford Financial Services Group's subsidiaries and affiliates, are paid by Hartford Fire for administrative purposes. But Hartford Fire has no other relationship to this case. Hartford Life issues and underwrites group insurance policies, including the one at issue here; Hartford Fire does not. The individuals involved in Davis's benefits decision were responsible for adjudicating claims under Hartford Life's policies; they had no responsibilities related to claims under Hartford Fire's policies. And correspondence to Davis and his counsel included "Hartford Life & Accident Insurance Company" in the signature blocks; no letters refer to Hartford Fire. Each of these signs point to Hartford Life, rather than Hartford Fire, exercising discretion in terminating Davis's benefits.

And like the facts, the law is not on Davis's side either. Indeed, several courts have rejected this exact argument with respect to benefits determinations involving Hartford Life. *See Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 378–80 (4th Cir. 2018); *Fenwick v. Hartford Life & Accident Ins. Co.*, 457 F. Supp. 3d 603, 619–23 (W.D. Ky. 2020); *Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 703–07 (W.D. Pa. 2017). Courts have also held the same with respect to other life insurers. *See, e.g.*, *Owens v. Liberty Life Assurance Co. of Bos.*, 184 F. Supp. 3d 580, 585–86 (W.D. Ky. 2016) (finding Liberty Life exercised its discretionary authority even though Liberty Mutual paid the salaries of its claim reviewers); *Campbell v. United of Omaha Life Ins. Co.*, No. 2:14-cv-00623-JEO, 2015 WL 5818040, at *9–11 (N.D. Ala. Oct. 6, 2015) (finding United of Omaha Life exercised its discretionary authority even though Mutual of Omaha employed its claim reviewers); *Zurndorfer v. Unum Life Ins. Co.*

*of Am.*, 543 F. Supp. 2d 242, 255–57 (S.D.N.Y. 2008) (finding Unum America exercised its discretionary authority even though UnumProvident employed its claim reviewers).

Davis resists this conclusion on two grounds. First, he argues that employees paid by Hartford Fire could not have acted as Hartford Life's agents because there is no "evidence of any actual relationship between Hartford Fire and [Hartford Life]." But Hartford Life provided a sworn declaration explaining that both entities are part of the Hartford Financial Services Group corporate family. In instances like this, where decisionmakers who act on behalf of an authorized plan administrator are employed by another entity within the corporate family, the plan administrator is still exercising (and has not delegated) its discretionary authority. *See Griffin*, 898 F.3d at 378–80; *Zurndorfer*, 543 F. Supp. 2d at 257 ("[T]he parties contracted for Unum America to make the benefit determinations, and it is beyond dispute that authorized agents of Unum America, whatever their other roles within UnumProvident['s] structure[,] acted as claims administrators.").

Second, Davis puts little stock in using correspondence signed on behalf of Hartford Life as evidence of decisionmaking. But we have previously found those sorts of indicia helpful in deciding what entity is exercising authority. *See, e.g.*, *Shelby Cnty. Health Care Corp.*, 581 F.3d at 366. So too here. Correspondence sent to Davis listed "Hartford Life & Accident Insurance Company" beneath each signatory, evidence that the signatories were acting on behalf of Hartford Life. *See Griffin*, 898 F.3d at 379–80. Confirming that conclusion, Hartford Life provided a declaration explaining that the individuals who considered Davis's benefits claim worked "on behalf of Hartford Life, under the authority of Hartford Life."

All told, the district court did not clearly err in finding that Hartford Life exercised its discretionary authority in terminating Davis's benefits. *See Griffin*, 898 F.3d at 378–80 (reaching the same conclusion under similar facts); *Fenwick*, 457 F. Supp. 3d at 622 (same); *Potts*, 272 F. Supp. 3d at 704–07 (same). Accordingly, the district court was correct to review Hartford Life's determination under the arbitrary-and-capricious standard. *Clemons*, 890 F.3d at 264.

*Hartford Life's Decision To Terminate Davis's Benefits.* Even under this deferential standard of review, Davis argues that the district court erred in upholding Hartford Life's decision to terminate his disability benefits. We review de novo "the district court's finding that the administrator's denial was not arbitrary and capricious." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citations omitted). That "extremely deferential" standard "has been described as the least demanding form of judicial review." *Id.* (internal quotations and citation omitted). As such, "we must uphold [Hartford Life's] decision if 'it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Jackson v. Blue Cross Blue Shield of Mich. Long Term Disability Prog.*, 761 F. App'x 539, 543 (6th Cir. 2019) (citing *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

1. *Deliberate, Principled Reasoning Process.* Throughout the claim review process, Hartford Life took steps to ensure it had an accurate understanding of Davis's health and functional capabilities. Start with the events of April 2012, when Reddy reported that Davis had more stringent functional restrictions than previously understood. To evaluate that report, Hartford Life sought additional information from Davis's orthopedist, and then had an in-house nurse review Davis's records. When the nurse found Reddy's assessment to be supported, Hartford Life conditionally granted Davis's claim for long-term disability benefits.

Following that determination, Hartford Life continued to evaluate Davis's disability status. In September, upon receiving conflicting information from Reddy, Hartford Life referred Davis's case to its investigation unit, which in turn found "discrepancies between the claimant's reported limitations and what he is observed doing on surveillance." A Hartford Life nurse then reviewed Davis's file and reached out to several treating physicians to inquire whether they believed Davis could return to full-time work with limitations. Davis's primary care physician and neurologist concluded he could, whereas Reddy believed he could not. These differing assessments spurred Hartford Life to seek an independent medical review. The independent examiner concluded that Davis was physically capable of sitting, standing, and walking for one hour at a time, respectively, for up to three hours each per eight-hour workday. Taking all of this

into consideration, Hartford Life decided that Davis did not meet the "Any Occupation" definition of disabled.

After Davis appealed Hartford Life's decision to terminate his benefits, Hartford Life reevaluated Davis's disability status. Updated records collected from Reddy indicated that Davis's multiple myeloma was stable and that his back pain was being controlled with a pain regimen. Further opinions from a pain management specialist and an internal medicine specialist concluded that Davis could work full-time, with some limitations. With these additional opinions, Hartford Life created a new Employability Analysis Report. The report identified five occupations at the "closest" level that Davis could perform and that aligned with the policy's "Any Occupation" definition. It was thus reasonable for Hartford Life to determine that Davis no longer qualified as disabled under the policy. *See McClain*, 740 F.3d at 1067 (finding it reasonable for an administrator to decide a claimant did not meet a policy's definition of "disabled to engage in *any* occupation" when the claimant could work part-time). All things considered, Hartford Life's decision to terminate Davis's benefits is fairly described as resulting from a "deliberate, principled reasoning process." *Jackson*, 761 F. App'x at 543 (quoting *Baker*, 929 F.2d at 1144).

Davis's arguments to the contrary are unavailing. As Davis notes, Hartford Life gave little weight to Reddy's opinion. But that opinion conflicted with three others, and Reddy failed to respond to inquiries about why that was so, making it far from arbitrary and capricious for Hartford Life to set that opinion aside. *See McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (explaining that "rely[ing] upon the medical opinion of one doctor over that of another" is not arbitrary and capricious when it is "possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision"). Nor do we see merit in Davis's assertion that Hartford Life interfered with Wener's independent review. Hartford Life sought clarification from Wener because his report included conflicting statements as to whether Davis could work an eight-hour day. Wener in turn clarified that Davis could perform "light or sedentary work . . . for an eight hour day" with certain restrictions. There is nothing unusual, it seems, about this sequence of events.

Davis next contends that Hartford Life improperly speculated in December 2013 that Davis would not meet the "Any Occupation" definition of disabled come April 2014. But as explained above, Hartford Life based its conclusion on opinions from Davis's physicians and an independent examination. And when Davis appealed that determination several months later, he was allowed to provide more medical documentation.

Davis further argues that Hartford Life's review process was flawed because it failed to show Davis's condition had improved. But that is not a finding Hartford Life needed to make. *See McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 704 (6th Cir. 2012) (finding no rule that an "administrator must have new evidence of improvement" when it changes a claimant's disability classification). All Hartford Life needed was "some reason for the change" in its classification, "based on any number of factors," *see id.*, a standard it met here.

Lastly, Davis lodges a series of challenges to Hartford Life's Employability Analysis Reports. Davis contends the reports did not accurately identify his limitations. But Hartford Life's initial report relied on the opinions of three physicians, each of whom concluded that Davis was capable of full-time work with certain restrictions. And the second report considered even more information, including two additional independent reviews of Davis's records.

Davis also says it was inappropriate for Hartford Life to use median wages to identify jobs with "earnings potential" that satisfied the "Any Occupation" definition. According to Davis, an occupation's median wage does not accurately reflect what he would earn because an employer would not pay him the median wage without requisite experience. But the policy emphasizes earnings *potential*, not starting salary, meaning the use of median wage is not problematic. A problem might arise where a report fails to specify how it computed a median wage figure. *See, e.g.*, *Williams v. Target Corp.*, 579 F. App'x 390, 392 (6th Cir. 2014) (remanding for a determination as to how Hartford Life calculated its median wage figure). But that flaw did not plague Hartford Life's report in this case.

Nor do we see any error in the jobs for which the report identified Davis as qualified. Davis asserts that many of those jobs required training of at least six months to a year. In actuality, the report simply estimated how long it would take a "typical worker" to be capable of

average performance in a job.   *See Specific Vocational Preparation*, O*NET OnLine, https://www.onetonline.org/help/online/svp (last updated Nov. 17, 2020).  And as someone who already had experience in the identified positions and fields, Davis likely had the requisite training for many of those jobs.

2.   *Substantial Evidence.*   Hartford Life's decision was also based on substantial evidence.  *Jackson*, 761 F. App'x at 544.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *General Med., P.C. v. Azar*, 963 F.3d 516, 520 (6th Cir. 2020) (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Hartford Life reasonably concluded that Davis could work full-time, under certain limitations.  Two doctors believed Davis could sit for the majority of an eight-hour workday.  A third doctor concluded that Davis could perform light-level or sedentary work for an eight-hour day through a mixture of sitting, standing, and walking.  A fourth determined that "there was no specific medical condition that precluded [Davis] from working at least at the full time sedentary occupational level."  And a fifth believed "Davis's history of multiple myeloma would not require functional limitations."  Reddy, of course, disagreed with this quintet of medical voices.  But Hartford Life was not required to "automatically . . . accord special weight" to Reddy's opinion simply because he was one of Davis's treating physicians.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Rather, the company could rely on the opinions of other doctors over Reddy's so long as doing so was rational and based on the evidence.  *See McDonald*, 347 F.3d at 169.  Hartford Life met that mark, relying on the opinions of two of Davis's other treating physicians and three independent doctors.  And Reddy failed to justify his opinion in response to those that disagreed with him.  Hartford Life therefore rationally credited the consensus conclusion of the other doctors.  Doing so was not arbitrary or capricious.  *See McClain*, 740 F.3d at 1065 ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." (citation omitted)).

*Davis's Equitable Claims*.   Davis also filed equitable claims under § 1132(a)(3) for breach of fiduciary duty and disgorgement.  The district court granted Hartford Life's Rule 12(c)

motion for judgment on the pleadings as to those claims. *Davis*, 2016 WL 1574151, at *1. We review that decision de novo. *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 465–66 (6th Cir. 2017). In so doing, we accept Davis's well-pleaded allegations as true, "[b]ut we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* at 466 (citation omitted).

Section 1132(a)(3) permits a plan participant to file suit "to enjoin any act or practice which violates [ERISA] or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). This "catchall" provision "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). As such, the availability of relief under § 1132(a)(3) is narrow: a claimant may pursue a § 1132(a)(3) claim "only where the [equitable] claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [§ 1132(a)(1)(B)] is otherwise shown to be inadequate." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (en banc) (emphasis omitted). Finding neither exception applicable, the district court granted judgment to Hartford Life on the breach of fiduciary duty and disgorgement claims. *Davis*, 2016 WL 1574151, at *1. That decision was sound.

Starting with Davis's fiduciary duty claim, his complaint lists six purported examples of Hartford Life breaching a duty owed to Davis, for example, establishing a claims process in which personnel "systematically delay claim decisions," "automatically accept the opinions of Hartford's paid medical reviewers," and "do not seek to reach an accurate decision." As these are conclusory allegations without factual support, we need not accept them as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must we accept Davis's assertion that Hartford Life breached its duties to "all other participants," as he once again puts no factual meat on the bones of this claim. The upshot is that Davis fails to show that his fiduciary duty claim is based on an injury distinct from his contract claim.

Much the same is true for Davis's disgorgement claim. He alleges that Hartford Life "accumulated earnings on the plan benefits otherwise payable to Mr. Davis." But this too is not

a distinct injury from the termination of Davis's benefits. "[I]n an action for wrongful denial of benefits, like this one, the denial of benefits necessarily results in a continued withholding of benefits until the denial is either finalized or rectified." *Rochow*, 780 F.3d at 374. As a result, "[t]he denial is the injury and the withholding is simply ancillary thereto . . . . Together they comprise a single injury." *Id.*

Nor has Davis shown the remedies available under § 1132(a)(1)(B) to be inadequate. Again, his breach of fiduciary duty claim does not identify an injury separate from the termination of his benefits, an injury for which he could seek recovery through § 1132(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B) (permitting a participant to file suit "to recover benefits due to him under the terms of his plan" and "to enforce his rights under the terms of the plan"). Section 1132(a)(1)(B) also provides an adequate remedy for Davis's disgorgement claim. *See Rochow*, 780 F.3d at 371 (finding a claimant was not entitled to duplicative relief under § 1132(a)(3) for disgorgement of withheld benefits when he could seek benefits and prejudgment interest under § 1132(a)(1)(B)). In fact, Davis's complaint acknowledges that both §§ 1132(a)(1)(B) and 1132(a)(3) serve as the "enforcement mechanisms permitting [him] to seek disgorgement."

Davis nonetheless argues that the district court erred because, at the time it dismissed his equitable claims, it "could not determine what remedy would make [Davis] whole." At the pleading stage, however, the relevant inquiry is whether Davis *could avail* himself of an adequate remedy for his loss of benefits under § 1132(a)(1)(B), not whether he in fact *would prevail*. *See Strang v. Ford Motor Co. Gen. Ret. Plan*, 693 F. App'x 400, 405 (6th Cir. 2017) ("[W]here an avenue of relief for the injury [is] unavailable under § 1132(a)(1)(B), '*irrespective of the degree of success obtained*,' a breach-of-fiduciary-duty claim cannot be brought." (quoting *Rochow*, 780 F.3d at 372)); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615–16 (6th Cir. 1998) (holding that a plaintiff was precluded from bringing a § 1132(a)(3) claim despite failing to recover benefits under § 1132(a)(1)(B) because he "availed himself of the remedy available to him under [§ 1132(a)(1)(B)]"). As Davis plainly was able to avail himself of such a remedy, his equitable claims under § 1132(a)(3) were properly dismissed.

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), does not change our conclusion. True, the Supreme Court allowed the participants there to seek equitable relief under § 1132(a)(3). *Id*. at

445.  But that was because the participants were not otherwise authorized to seek relief under § 1132(a)(1)(B) for CIGNA's misrepresentations about its ERISA plan.  *Id.* at 438.  Yet unlike the claimants in *CIGNA*, Davis was authorized to seek relief for the termination of his benefits under § 1132(a)(1)(B), thereby foreclosing other avenues for relief.  *See Rochow*, 780 F.3d at 371.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.