NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0283n.06

No. 22-3774

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KAREN O'KELLY, fka Karen Langenfeld, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| FEDERAL RESERVE BANK OF CLEVELAND, et al., | ) | |
| Defendants-Appellees. | ) | OPINION |

FILED
Jun 16, 2023
DEBORAH S. HUNT, Clerk

Before: BOGGS, WHITE, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. Karen O'Kelly stopped working at the Federal Reserve Bank of Cleveland ("Bank") and filed for long-term disability benefits, citing symptoms related to mold exposure. The Bank's third-party claims administrator, Matrix Absence Management, Inc. ("Matrix"), initially approved O'Kelly's claim but later terminated her benefits after finding that she no longer qualified as "totally disabled" under the terms of the plan. O'Kelly now challenges Matrix's denial. Because the Bank delegated authority under the plan to Matrix to decide benefits claims in its sole discretion, we review Matrix's decision only for arbitrariness under New York law. Matrix's decision was procedurally sound and supported by substantial evidence, including the professional opinions of seven physicians who reviewed O'Kelly's medical records. We affirm the district court's grant of summary judgment to the Bank.

**I**

**A. Administrative History**

While working at the Federal Reserve Bank of Cleveland, Karen O'Kelly enrolled in the long-term disability-income plan for Federal Reserve employees. Under the plan, participants can receive long-term disability benefits if they are deemed "totally disabled." The plan provides two definitions of total disability, based on how long the participant claims to have been disabled. During the first eighteen months of the participant's disability, the participant is totally disabled if her disability keeps her from working on a regular and full-time basis at her own job or at another job in her same occupation. After eighteen months, the participant is totally disabled if her disability keeps her from working in *any* occupation.

To administer benefits under the plan, the plan administrator appoints a medical board— which may be a third-party administrator—to determine whether those who have filed claims are totally disabled. The medical board has sole discretion to make these determinations. The Bank appointed a third party, Matrix, as the plan's medical board. Matrix adjudicated O'Kelly's claim.

After first complaining of exposure to mold in August 2015, O'Kelly stopped working for the Bank on August 31, 2016. When she exhausted her short-term disability benefits, O'Kelly filed for long-term disability benefits. O'Kelly also applied for social-security disability benefits, for which she submitted to a psychological exam in February 2017. The Social Security Administration (SSA) deemed O'Kelly disabled due to "psychologically based symptoms" and approved her claim.

After receiving the SSA's report, Matrix agreed that O'Kelly could not work at her own job and approved her claim for the plan's initial eighteen-month period, which ended on March 1, 2018. Matrix found that, although O'Kelly's medical records did not support her claim that she

was impaired due to mold toxicity, heavy-metal exposure, or chronic-inflammatory-response syndrome, they did support O'Kelly's claims of impairment due to depression and anxiety. However, Matrix told O'Kelly that it would review her claim as she moved into the plan's second period, which would require a finding that O'Kelly could not work in *any* occupation.

In January 2018, roughly three months before the initial eighteen-month period was set to elapse, Matrix reviewed O'Kelly's updated medical records and found that O'Kelly was not totally disabled, even under the initial-period definition, because her disability did not keep her from working in her own job or in another job in that occupation. Matrix terminated her disability benefits immediately.

O'Kelly appealed, attaching additional information. Matrix agreed to review its termination decision, and scheduled O'Kelly for a medical exam. A psychologist evaluated O'Kelly and found no evidence of neurocognitive impairment. As to O'Kelly's alleged anxiety and depression, the psychologist noted that her failing scores on a symptom-validity test suggested that she was "likely feigning." Matrix also sent O'Kelly's records to two physicians, who found no support for O'Kelly's impairment from any physical or mental conditions. Matrix's medical director reviewed O'Kelly's file and reached the same conclusion. Matrix also reviewed the SSA's award of disability benefits, which Matrix noted was based on records only up to March 2017. In October 2018, Matrix affirmed its denial of O'Kelly's benefits, noting that it had considered the medical exam, peer reviews, the director's review, and the SSA award.

O'Kelly appealed again, attaching more information. Matrix sent O'Kelly's claim to two new doctors—an internist and a psychiatrist—for further peer review. Both doctors found no functional impairment. However, during the psychiatrist's review, one of O'Kelly's doctors recommended that her records be reviewed by a pain-medicine specialist or by a neurologist.

Matrix had both types of doctor review O'Kelly's records. The neurologist found no support for impairment, but the pain-medicine specialist suggested that O'Kelly had some functional limitations, such as a limited ability to lift and no ability to crawl or balance. Matrix sought more input as to whether O'Kelly could perform her own occupation within those limitations identified by the specialist. Two vocational-rehabilitation consultants reviewed O'Kelly's records and concluded that she could work in her job. The consultants also identified four other occupations within 50 miles of O'Kelly's residence that matched her skill set and physical limitations. Matrix denied O'Kelly's second appeal in May 2019 and declared its decision final. Summarizing all of this medical evidence, Matrix concluded that no disability kept O'Kelly from working in her job or in another occupation.

### B. Procedural History

O'Kelly sued the Bank in the Northern District of Ohio, seeking review of the Bank's denial of disability benefits. The parties agreed at the outset that, although the Employee Retirement Income Security Act of 1974 ("ERISA") might not govern the plan at issue, their case would be handled "in the same manner as that followed for Plan benefit claims under" ERISA. The district court assigned the case to the administrative track, which does not permit discovery. Instead, both parties moved for summary judgment based on the administrative record.

The district court granted summary judgment to the Bank. Assuming that the Bank's plan is a governmental plan that ERISA does not cover, the district court agreed with the Bank that, under New York law, it would review only whether Matrix's denial of benefits was arbitrary or capricious. The court declined to make its own determination of whether O'Kelly was disabled under the plan's definition and focused instead on Matrix's decision-making process.

The district court upheld Matrix's denial of O'Kelly's benefits. The court held that Matrix's decision was not arbitrary because evidence in the administrative record supported it. The court addressed O'Kelly's claims that Matrix had failed to consider or improperly weighed various pieces of evidence, including her psychological exam in February 2017, the medical opinions of her physicians, the psychologist's suggestion that O'Kelly could be faking her symptoms, and her favorable SSA award of disability insurance. Weighing conflicting evidence and crediting one medical opinion over another, the district court noted, does not constitute arbitrary action. The court also found the decision untainted by any bias or conflict of interest. The court noted that O'Kelly had not provided any evidence suggesting that Matrix's review process was biased in favor of the Bank. O'Kelly timely appealed.

## II

### A.  Standard of Review

This case's procedural posture requires us to identify two standards of review: one for Matrix's decision and another for the district court's. *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022).

Under ERISA, for employee-benefit plans that give discretionary power to administrators to interpret plan terms and determine eligibility for benefits, we review an administrator's denial of benefits under the arbitrary-and-capricious standard. *Ibid.* (citing *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013)). However, this is not an ERISA case. ERISA does not apply to "governmental plan[s]," 29 U.S.C. § 1003(b)(1), which include employee plans established or maintained by the U.S. government or by its "agency or instrumentality," *id.* §

1002(32).[1] The district court assumed, and the parties agreed, that the Bank is such an instrumentality and its plan a governmental one to which ERISA does not apply. *See Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 742 F.3d 37, 40 (2d Cir. 2014) (explaining that federal reserve banks are federal instrumentalities); 12 U.S.C. § 391 (designating federal reserve banks as "fiscal agents of the United States"). We assume the same.

Since ERISA does not apply, contract-law principles determine our standard of review for Matrix's decision. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13 (1989). Here, the plan contains a New York choice-of-law provision. Therefore, we apply New York law in reviewing O'Kelly's claims.

Under New York law, we enforce written agreements that are "complete, clear and unambiguous on [their] face" according to the plain meaning of their terms. *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). When a plan vests sole authority in the designated decisionmaker, an employer's decision to deny "non-ERISA benefits may be set aside only where it is made in bad faith, was arbitrary or was the result of fraud." *Welland v. Citigroup, Inc.*, No. 00-Civ-738, 2003 WL 22973574, at *11 (S.D.N.Y. Dec. 17, 2003), *aff'd*, 116 F. App'x 321 (2d Cir. 2004). If a reasonable basis supports the decision, we may not "substitute [our] judgment for that of [the employer] on the disputed factual issues." *Ibid.* (second alteration in original) (quoting *Gehrhardt v. Gen. Motors Corp.*, 581 F.3d 7, 12 (2d Cir. 1978)).

O'Kelly argues that *Welland* does not apply because it concerned stock options, not disability benefits. This distinction is unpersuasive. In *Welland*, the employer offered its employees stock options that were forfeited upon the employee's termination for any reason other

---

[1] ERISA, then, cannot provide the statutory hook for federal subject-matter jurisdiction. *Halttunen v. City of Livonia*, 664 F. App'x 510, 513 (6th Cir. 2016). Instead, the district court exercised jurisdiction under the Federal Reserve Act, 12 U.S.C. § 632.

than retirement. *Id.* at \*10. To determine when employees forfeited their stock options under the plan, the employer delegated authority to a committee that "functioned as the plan administrator and was vested with the sole authority to interpret" the terms of the benefits plan. *Id.* at \*11. In affirming the district court's standard of review, the Second Circuit found this delegation of authority especially relevant. *Welland*, 116 F. App'x at 322.[2] Here, the Bank's plan similarly delegated authority to Matrix to make all disability determinations in its sole discretion, making arbitrary-and-capricious review of Matrix's denial the appropriate standard.

O'Kelly also refers us to *Dunham v. Unum Grp.*, No. 2:13-cv-0794, 2015 WL 6798578 (S.D. Ohio Nov. 6, 2015), suggesting that we should review Matrix's decision de novo. There, the court reviewed de novo a breach-of-contract claim under a non-ERISA disability-benefits plan that defined disability and denied benefits because the claimant did not meet that definition. *Id.* at \*3–4. We find this case unhelpful. First, the *Dunham* court applied Ohio law, not New York law. *Id.* at \*3. Second, the plan did not delegate authority to a third-party administrator to make disability determinations in its sole discretion. Since O'Kelly's plan expressly included such a delegation, New York law requires us to enforce it. *See Greenfield*, 780 N.E.2d at 170. Therefore, whether the Bank breached its contract with O'Kelly turns not on whether O'Kelly is actually disabled, but on whether Matrix's denial was a valid exercise of its delegated decision-making authority—that is, on whether its decision was "made in bad faith, was arbitrary or was the result of fraud." *Welland*, 2003 WL 22973574, at \*11.

---

[2] We note that the Second Circuit described the district court's review as review "under an arbitrary and capricious standard." *Welland*, 116 F. App'x at 322, which explains why we and the district court also cite non–New York cases that employ this standard.

As for our review of the district court, we review its legal holding that Matrix did not act arbitrarily de novo and its factual findings for clear error. *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 852 (6th Cir. 2021).

**B. Threshold Challenges**

O'Kelly raises several challenges to the district court's decision that we address before reviewing whether Matrix's decision was arbitrary. In particular, O'Kelly argues that the district court applied the wrong standard of review to Matrix's decision, and considered medical documents in the administrative record that were not authenticated and therefore inadmissible as evidence.

First, we conclude from our discussion above that the district court applied the proper standard of review under New York law. Second, we note that the district court properly based its grant of summary judgment on the administrative record. O'Kelly forfeited her authentication argument below by raising it for the first time in her summary-judgment reply brief. *See Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Even if we did not deem O'Kelly's argument waived, we would agree with the district court that it does not "constitute a proper objection on summary judgment." The Federal Rules of Civil Procedure have no bearing on which medical documents Matrix may consider in evaluating O'Kelly's claim. *Cf. Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring) (stating, as the opinion of the court, that Rule 56's summary-judgment procedures are "inapposite" to ERISA actions). O'Kelly's point that her case is a non-ERISA matter does not render Rule 56 any more appropriate because the district court still was required to review the full administrative record that Matrix used in its review in order to rule on arbitrariness.

We also decline, as the district court did, to consider O'Kelly's argument that she met the plan's definition of being totally disabled. Our decision to review Matrix's denial for arbitrariness renders moot O'Kelly's breach-of-contract argument on the merits of her disability claim. Our role on review is not to find for ourselves whether O'Kelly was totally disabled under the plan, but to check if a reasonable basis supported Matrix's finding.

### C. The Bank's Decision

Arriving at O'Kelly's central challenge, we find no bad faith, arbitrariness, or fraud in Matrix's denial of benefits. The decision to deny plan benefits is not arbitrary if it is "the result of a deliberate, principled reasoning process and . . . supported by substantial evidence." *Autran*, 27 F.4th at 411 (omission in original) (quoting *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 547 (6th Cir. 2020)). Substantively, plan administrators can reach only those decisions for which a rational person could conclude that adequate evidence exists. *Id.* at 412. When the record contains enough support for a rational decision in either direction, how the administrator weighs conflicting evidence is not arbitrary. *Ibid.* Procedurally, plan administrators must reach their decisions through "reasoned decisionmaking." *Ibid.* If a participant's disability is contested, the administrator must weigh the full administrative record. *Id.* at 415.

Matrix's decision in O'Kelly's case passes substantive and procedural muster. The record contained more than adequate evidence for Matrix to conclude that O'Kelly was not disabled. *See id.* at 413. O'Kelly's primary-care physician and seven other physicians all reviewed O'Kelly's medical records and found no evidence that she suffered from any neurological impairment. After the SSA's disability finding, another physician found no evidence of a disabling psychiatric condition. And to the extent that O'Kelly does suffer some impairment, two vocational reviews found that O'Kelly could perform her own or another occupation.

Matrix also considered the full administrative record in deciding O'Kelly's claim. In its 33-page final denial letter, Matrix addressed all relevant evidence, including the conflicting disability opinions. Matrix also confronted the SSA's contrary disability finding, explaining that the initial SSA award was based on clinical records from the time of the SSA decision and that its denial rested on "updated clinical information" received since the SSA's decision and on "current findings" from four physicians. In sum, Matrix had enough evidence to conclude that O'Kelly was not totally disabled, and it followed a rational process in reaching that conclusion. *See ibid.*

O'Kelly responds with instances of alleged arbitrariness at each of Matrix's three reviews. She argues that Matrix's decision was arbitrary because (1) Matrix's initial termination of benefits "relied on an unnamed non-examining nurse practitioner" who found that O'Kelly's condition had improved, and (2) Matrix did not address the opposing medical opinions of several physicians, submitted with O'Kelly's first and second appeals.

### 1. Initial Termination

O'Kelly argues that Matrix's initial decision to terminate her disability benefits was arbitrary because it relied in part on the opinion of an unnamed nurse who focused on the fact that O'Kelly was "smiling and appear[ed] improved" at a medical appointment. This opinion, O'Kelly argues, amounted to a selective review of the record.

O'Kelly's focus on the nurse is misplaced because it challenges only Matrix's initial termination of benefits, not its final denial. Under the terms of the plan, Matrix's denial of O'Kelly's benefits was not final until she exhausted the internal appeals process, after which Matrix reached a final decision based on its review of all the evidence in the record. Only Matrix's final decision is before us. In that decision, it is clear that Matrix addressed all of the relevant information.

Even if we reviewed Matrix's initial termination, we would not find it arbitrary. As the district court noted, Matrix had reviewed and summarized medical records from four of O'Kelly's doctors. Both Matrix and the nurse based their conclusions on this evidence. And although Matrix's initial termination letter did not mention the SSA's disability finding, Matrix relied on that same finding when it first approved O'Kelly's disability benefits. O'Kelly's claim of selective review mischaracterizes the review that actually took place.

### 2. First Appeal

O'Kelly next argues that Matrix acted arbitrarily by failing to address a clinical counselor's opinion, submitted with O'Kelly's first appeal, that suggested that O'Kelly suffered from depression, anxiety, and post-traumatic stress disorder. However, Matrix noted in its final letter that the counselor's opinion was inconclusive and never actually diagnosed O'Kelly with any disorder. It was not arbitrary for Matrix to assign little weight to a medical opinion with little significance. In any event, Matrix's reviewing physicians addressed the opinion. Two peer reviewers noted that the opinion lacked any specific diagnosis or definitive finding of impairment. Another noted that the opinion was based only on a "symptom survey" ordered by O'Kelly's own attorney. O'Kelly faults one of the peer reviewers for not personally contacting the author of the opinion, but she offers no support for the notion that Matrix's reviewing physicians must contact each of O'Kelly's care providers. Matrix's review of the medical record was adequate, and that review balanced the counselor's opinion against the weight of other relevant evidence.

### 3. Second Appeal

Finally, O'Kelly contends that Matrix acted arbitrarily when it failed to respond to two medical opinions that O'Kelly submitted with her second appeal. Although Matrix consulted four physicians in reviewing O'Kelly's second appeal, O'Kelly claims that none refuted the conclusions

of her physicians, which countered Matrix's findings up to that point. Even if we accepted O'Kelly's premise that Matrix needed to rebut each contrary opinion in the medical record, we would conclude that Matrix met that burden. *See Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) ("Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions."). Matrix sent O'Kelly's medical records to four physicians, who reviewed these opinions in light of the medical evidence from O'Kelly's other doctors. One reviewer even spoke with the author of one of O'Kelly's proffered opinions and addressed that diagnosis in his report. The other opinion, as the district court noted, conflicted with those of three of O'Kelly's doctors. Contrary to what O'Kelly claims, Matrix explained its disagreement with the two opinions through its peer reviewers. In denying O'Kelly her disability benefits, Matrix did not ignore any part of the medical record.

## CONCLUSION

For the reasons above, the judgment of the district court is **AFFIRMED**.