File Name: 06a0457n.06
Filed: June 29, 2006

NOT RECOMMENDED FOR PUBLICATION

Nos. 05-5791/05-6327

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JULIE EVANS,

    Plaintiff/Counter-Defendant -
    Appellant/Appellee,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, d/b/a METLIFE,

    Defendant/Counter-Plaintiff-
    Appellant/Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
TENNESSEE

_____/

Before:     GILMAN and GRIFFIN, Circuit Judges, and DUGGAN, District Judge[*]

PATRICK J. DUGGAN, District Judge.

Plaintiff Julie Evans ("Evans") filed an action against Defendant Metropolitan Life

Insurance Company ("MetLife"), claiming that MetLife violated Section 502(a)(1)(b) of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B),

when it denied her long-term disability income benefits ("LTD benefits").[1] Ruling on the

_____

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of
Michigan, sitting by designation.

[1]MetLife filed a counterclaim against Evans alleging that it overpaid her $2,576.97
in LTD benefits as a result of the United States Social Security Administration's decision to

parties' cross-motions for judgment on the administrative record, the district court held that MetLife acted arbitrarily and capriciously when it denied Evans' claim for LTD benefits. MetLife is appealing the district court's determination in Case No. 05-5791.

After the district court ruled in favor of Evans, she filed a motion for attorneys' fees pursuant to Rules 54(d)(1) and (2) of the Federal Rules of Civil Procedure and 29 U.S.C. § 1132. The district court denied Evans' motion on August 2, 2005. Evans is appealing that determination in Case No. 05-6327.

For the following reasons, we conclude that the district court erred in finding MetLife's denial of Evans' claim for LTD benefits arbitrary and capricious. We therefore reverse the judgment of the district court and remand this matter for further proceedings consistent with this opinion. Because Evans no longer is a "prevailing party," we affirm the district court's denial of Evans' request for attorneys' fees.

## I.      Factual and Procedural Background

On March 22, 1999, Evans commenced employment at the Kroger Company ("Kroger") as an Inventory Control Supervisor. As an employee of Kroger, Evans participated in the Kroger Company Long Term Disability Plan ("Plan"). MetLife served

---

award her Social Security Disability Benefits. The district court held that MetLife was entitled to a reimbursement and therefore granted judgment in favor of MetLife on its counterclaim. Evans has not appealed that decision.

as the claims administrator responsible for administering claims for LTD benefits under the

Plan.

Pursuant to the Plan, employees are entitled to monthly LTD benefits if they are

disabled and became disabled while covered under the Plan. As relevant to this appeal, the

Plan defines "disabled" as follows:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period[2] and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy . . .[3]

The Plan provides the following definition for the term "Own Occupation":

> "Own Occupation" means the activity that you regularly perform and that serves as your source of income. It is not

---

[2]Under the Plan, the "Elimination Period" varies for different employees: for Kroger East and Kroger West employees it is 180 days of continuous Disability or the end of the employee's salary continuance, whichever is greater; for Kroger Central employees it is 90 days of continuous Disability. The Plan further explains: "Your Elimination Period begins on the day you become Disabled. It is a period of time during which no benefits are payable . . . You must be under continuous care of a Doctor during your Elimination Period. You may temporarily recover from your Disability during your Elimination Period. If you then become Disabled again due to the same or related condition, you may not have to begin a new Elimination Period."

[3]In order to qualify as "Disabled" under the Plan after the 24 months following the Elimination Period, the employee must be "receiving Appropriate Care and Treatment from a Doctor on a continuing basis" and be "unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupations for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings."

> limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer.

Evans suffers from a condition known as thoracic scoliosis, an abnormal curvature of the spine. According to Evans, although the disease has been present throughout most of her life, it essentially was asymptomatic until early 2002. At that time, Evans alleges that she began experiencing severe pain, difficulty moving, and numbness. Evans claims that by mid-March 2002, she no longer was able to work due to her condition.

Evans applied for and received salary continuation benefits from March 18 through September 14, 2002. She filed a claim for LTD benefits under the Plan in August 2002. On October 22, 2002, MetLife approved Evans' eligibility for benefits, retroactive to September 15, 2002. On December 17, 2002, however, MetLife sent a letter to Evans informing her that it was terminating benefits effective December 21, 2002. In its letter, MetLife explained a basis for its decision as follows:

> An Independent Physician Consultant certified in Internal Medicine and Infectious Diseases [Dr. Mark Moyer] reviewed your file. The results of the consultant's review were sent to Dr. [Donald] Watters [Evan's treating physician] for review. Dr. Watters did not comment, but instead requested that the consultant's report be forwarded to Dr. [David] Hauge for review because you are currently under his care.

> Dr. Hauge states he concurs with the consultant's review that you have the ability to return to work in a sedentary position with restrictions and limitation of occasionally lifting up to 20 pounds and very little bending.

> Your employer advised that they are able to accommodate the restriction and limitations above, indicating that there are other employee's [sic] who can do any lifting you feel is beyond your capacity.
>
> Based on the information provided[,] the medical information does not support functional impairments, which would prevent you from performing the duties of your occupation as a [sic] Inventory Control Supervisor. Therefore, your claim for Long Term Disability has been terminated.

In a letter dated December 18, 2002, Evans appealed MetLife's denial of her claim for LTD benefits.

In its review of Evans' claim on appeal, MetLife referred her file to a second Independent Physician Consultant, Dr. Warren Silverman, who is Board Certified in Occupational Medicine and Internal Medicine. After reviewing Evans' file, Dr. Silverman opined that Evans needs to have some restrictions with regard to work activities, particularly lifting and bending repetitively; but Dr. Silverman concluded from the surveillance of Evans that she "is not bedridden . . . remains active . . . is able to perform lifting of light weights and . . . does appear to be capable of operating a motor vehicle . . ." Dr. Silverman therefore concurred with Drs. Hauge and Moyer that Evans "is physically capable of doing light work with 20 pounds occasional lifting."

After receiving Dr. Silverman's report, MetLife sent Evans a letter on February 11, 2003, notifying her of its decision to uphold the original claim determination. In its letter, MetLife conveys Drs. Hauge's and Silverman's opinions that Evans is capable of performing

sedentary work with restrictions on lifting and bending repetitively. MetLife concludes that the doctors' opinions support its prior determination that Evans is capable of returning to the workplace in the modified position Kroger offered.

In the meantime, on March 20, 2002, Evans had applied to the United States Social Security Administration for Social Security Disability Benefits. An Administrative Law Judge ("ALJ") conducted a hearing with respect to her application on August 18, 2003, and issued a decision on August 27, 2003, finding Evans entitled to disability benefits commencing February 26, 2002. Evans sent a letter to MetLife on October 6, 2003, asking MetLife to reconsider its denial of LTD benefits based on the ALJ's decision. On February 11, 2004, after MetLife declined to reopen Evans' case, she filed her complaint in district court.

## II.     Standard of Review for MetLife's Appeal

This Court reviews a decision of a district court in an ERISA benefits case *de novo*. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002). The parties agree that the standard of review in this case– where MetLife possessed discretionary authority to construe and interpret the Plan– is whether the denial of benefits was arbitrary and capricious. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-97 (1989)). When applying this standard, courts must consider only facts

known to the plan administrator at the time of its decision. *Yaeger v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

"A decision regarding the eligibility for benefits is not arbitrary and capricious if the decision is 'rational in light of the plan's provisions.'" *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). "Stated differently, 'when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Id.* (quoting *Davis v. Kentucky Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Although highly deferential, "[t]he arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

## III.     Discussion of MetLife's Appeal

The district court held that MetLife's denial of LTD benefits to Evans was arbitrary and capricious for two reasons. First the district court found, based on statements in MetLife's motion for judgment on the administrative record, that MetLife considered unsubstantiated information reported by several of Evans' fellow employees when it decided to deny Evans LTD benefits. According to an entry in the administrative record, the employees informed Kroger that they saw Evans jet skiing, riding a motorcycle, and working on cars while she was off work for her disability. The district court concluded that MetLife's reliance on this report was arbitrary and capricious because MetLife never determined the

identity of the employees and because MetLife's subsequent surveillance of Evans failed to corroborate the employees' claims. Second, finding that the modified position Kroger offered Evans did not accommodate all of her work restrictions, the district court held that it was arbitrary and capricious for MetLife to rely on the offer in concluding that Evans was capable of earning at least 80% of her Predisability Earnings at her "Own Occupation."

As an initial matter, Evans asserts that because MetLife specifically argued below that its decision to deny Evans benefits was supported by her motorcycle riding, jet skiing, and work on cars, it should be estopped from arguing on appeal that the report of these activities by her fellow employees was not relevant to its decision. MetLife contends that estoppel should not apply because its counsel erred in making the argument below as the administrative record in fact does not suggest that MetLife relied on this report when it rendered its decision. We agree.

A court's review of a plan administrator's decision in an ERISA case– whether the court is conducting a *de novo* review or a review under the arbitrary and capricious standard– must be based solely on the administrative record. *See Yaeger, supra*; *see also Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998). Arguments and factual assertions made by the parties which are not supported in the administrative record should not be considered. *Wilkins*, 150 F.3d at 619. While the administrative record in this case contains a note regarding the report by Evans' fellow employees, there is no evidence in the record

to suggest that MetLife gave any credence to the report. In fact, except for MetLife's reference to the report as a basis to initiate surveillance of Evans, the administrative record contains no further mention of the report or the allegations made therein. Moreover, MetLife initially granted LTD benefits to Evans after it received the employees' claims regarding Evans' activities.

The administrative record does not suggest that MetLife considered the employees' allegations in rendering its decision to deny LTD benefits to Evans as of December 21, 2002. We therefore find no basis to support the argument that MetLife's decision was premised, at least in part, on those allegations. As a result, the district court erred in concluding that MetLife's decision was arbitrary and capricious as a result of its supposed reliance on those claims.

The district court also concluded, and Evans argues on appeal, that MetLife acted arbitrarily and capriciously when it relied on Kroger's offer to accommodate Evans' work restrictions to find that she was capable of earning at least 80% of her Predisability Earnings at her "Own Occupation" and thus was not disabled under the Plan because the modified job did not accommodate all of Evans' work restrictions. Specifically, the district court concluded that the modified position Kroger offered Evans did not accommodate Evans' inability to (1) engage in medium work, (2) bend, twist, and crouch/stoop, or (3) routinely work overtime. The administrative record, however, does not support the district court's

finding that these restrictions were unequivocally recommended for Evans or that the modified position did not accommodate these restrictions.

The district court apparently concluded that the modified position Kroger offered Evans required medium work, rather than light work, since it occasionally involved lifting 21 to 50 pounds.[4] We are not convinced that the job Evans previously performed constituted medium work because it involved occasional lifting of 21 to 50 pounds.[5] Nevertheless, Kroger specifically indicated that it was willing to remove any lifting from Evans' job responsibilities in order to accommodate her work restrictions.

The district court concluded that Evans was restricted from twisting and crouching/stooping, restrictions the court found lacking in the modified job Kroger proposed.[6] None of the physicians on whose opinions MetLife relied, however, imposed a

---

[4]In her brief, Evans describes the Inventory Control Supervisor position as involving "intensive manual labor." Nothing in the administrative record describes the position in these terms and a review of the responsibilities set forth in the job description does not suggest that "intensive manual labor" was required.

[5]*See* 20 C.F.R. § 404.1567. According to the Administrative Law Judge's decision, the vocational expert who testified at Evans' Social Security Administration hearing classified her past work– including her job as a warehouse worker– as light work.

[6]The district court also concluded that Kroger's job description failed to accommodate Evans' work restrictions because it did not specify that no bending would be required. While Dr. Hauge stated and Dr. Moyer concurred that "the less lifting and bending the better in a patient with this degree of scoliosis . . . ," neither doctor specifically imposed a no bending work restriction. Moreover, it would have been reasonable for MetLife to conclude that the amount of bending necessary to fulfill the Inventory Control Supervisor position would be diminished due to the removal of any previous lifting requirement. MetLife apparently made this assumption as it stated in its letter to Evans on February 11, 2003, that Kroger is capable of accommodating her lifting *and*

no-twisting-or-crouching/stooping restriction. Dr. Hauge concluded that Evans was "physically capable of doing light work with 20 pounds occasional lifting but the less lifting and bending the better . . ." Dr. Moyer, the first physician MetLife consulted to independently review Evans' file, equated Evans' condition to sciatica and wrote:

> Persons with sciatica and low back pain are commonly able to perform at a sedentary or sedentary to light level with avoidance of prolonged sitting, standing or walking while working at their own pace so that changes of position can be afforded on an as needed basis. The records provided would support that this person would also reasonably be restricted to sedentary to light work where she may lift up to 20 pounds occasionally but should alternate between sitting, standing and walking for pain relief and comfort. The records provided would not support that this person is incapable of doing any type of work, however, the medium level work described in her current job description may not be reasonable under the circumstances.

Dr. Silverman, the second independent physician MetLife consulted, concurred with Drs. Hauge's and Moyer's recommendations.

Only Dr. Watters, Evans' treating physician, recommended a-no-twisting-or-crouching/stooping restriction. While the district court recognized that MetLife was not bound by Dr. Watters' opinion and that it was not arbitrary or capricious for MetLife to rely instead on Dr. Hauge's assessment, the court proceeded to find Kroger's proposed job offer lacking because it failed to incorporate restrictions recommended by Dr. Watters, but not Dr. Hauge. This was improper under an arbitrary and capricious standard of review.

---

*repetitive bending* restrictions.

Finally, the district court concluded that it was arbitrary and capricious for MetLife to rely on Kroger's offer because the modified job did not accommodate her inability to routinely work overtime. The district court acknowledged that none of the physicians who reviewed Evans' case, including her treating physician, specifically addressed the question of whether Evans could routinely work overtime. Nevertheless, the court surmised that "Dr. Moyer's statement that Evans would need to avoid prolonged sitting, standing or walking while working at her own pace, strongly suggests that her scoliosis would produce some limitation/restriction on Evans' ability to routinely work overtime."

We do not infer a necessary correlation between the need to change positions or work at one's own pace and the ability or inability to work overtime and believe that it was error for the district court to assume that such a correlation exists. We therefore conclude that the district court erred in finding that Evans was incapable of working overtime when– as the district court itself recognized– there is no indication of this restriction in the administrative record. Moreover, there is evidence in the administrative record suggesting that the position Kroger offered Evans did not require overtime work. In Kroger's e-mail to MetLife describing the modified position, Kroger provides: "The hours are 10:00 PM to 6:30 AM Sunday through Thursday – *a 40 hour work week*." (Emphasis added.)

Evans raises other arguments not addressed by the district court to support her assertion that MetLife acted arbitrarily and capriciously when it denied her claim for LTD

benefits based on the modified position offered by Kroger.  First, Evans argues that the "sedentary position" Kroger offered did not accommodate her inability to sit for prolonged periods of time and to concentrate.  In her brief, Evans declares that "[i]t goes without saying that a sedentary position is one that requires a great deal of sitting."  She further claims that a sedentary position "also certainly requires focused concentration and mental clarity."  Evans, however, does not cite any authority to support her description of a sedentary position.  In fact, there are numerous jobs qualifying as sedentary positions which do not require prolonged sitting without the benefit of occasional standing and walking or focused concentration and mental clarity.[7]

Evans also argues that the accommodated position offered by Kroger is so different from the Inventory Control Supervisor position she previously worked that it cannot possibly be considered her "Own Occupation" under the terms of the Plan.  As set forth previously, the Plan defines the term "Own Occupation" to mean "the activity that you regularly perform

---

[7]The Court can take judicial notice of the following definition of "sedentary work" set forth in the Department of Labor's *Dictionary of Occupational Titles*, which has been adopted by the Social Security Administration in 20 C.F.R. § 404.1567(a):

> **Sedentary work** involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

and that serves as your source of income." The Plan further provides, however, that "[*i*]*t is not limited to the specific position you held* with your Employer. It may be a *similar* activity that could be performed with your Employer or any other employer." (Emphasis added.) Kroger informed MetLife that it was willing to return Evans to the specific supervisory position she previously held. We do not believe that there was any reason for MetLife to question that representation or to question whether the modified position would involve at least similar activity to that which Evans previously performed, particularly as the description of the supervisory position Evans held prior to her disability lists numerous tasks that can be performed in a sedentary environment without the need to lift more than 20 pounds.

This Court finds no basis to conclude that MetLife's decision to deny Evans LTD benefits was arbitrary and capricious. The decision is rational in light of the Plan's provision that employees are not disabled if they are able to earn more than 80% of their Predisability Earnings at their "Own Occupation." Drs. Hauge, Moyer, and Silverman agreed that Evans was capable of working in a sedentary position with 20 pounds occasional lifting, restrictions the administrative record indicates Kroger accommodated in the modified Inventory Control Supervisor position it offered Evans. The district court erred in holding otherwise.

## IV.    **Evans' Appeal**

Evans appeals the district court's denial of her motion for attorneys' fees, filed pursuant to Federal Rules of Civil Procedure 54(d)(1) and (2) and 20 U.S.C. § 1132(g).

Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs only to the "prevailing party."[8] FED. R. CIV. P. 54(d)(1). 29 U.S.C. § 1132(g) grants courts statutory authority to award attorneys' fees in an ERISA action, providing that in certain actions "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee to either party." 29 U.S.C. § 1132(g). Section 1132(g) does not expressly limit an award of attorney fees to a prevailing party. Courts, however, have interpreted the statute to allow an award only to a prevailing party. *See, e.g., Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 89 n. 14, 102 S. Ct. 851, 862 n.14 (1982); *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 427 (6th Cir. 1992). Based on our decision upholding MetLife's denial of LTD benefits to Evans, Evans cannot be considered a prevailing party. We therefore hold that Evans is not entitled to an award of attorneys' fees and costs.

## V.    Conclusion

For the foregoing reasons, we REVERSE the district court's judgment in favor of Evans and REMAND for entry of judgment in favor of MetLife.

---

[8]Federal Rule of Civil Procedure 54(d)(2) sets forth only the mechanism and timing for seeking an award of attorneys' fees, it does not provide independent authority for courts to award attorneys' fees. *See* FED. R. CIV. P. 54(d)(2); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S. Ct. 3088, 3096-97 (1986)(explaining that, generally, attorneys' fees are not taxable costs in federal court absent a contractual right to or statutory authority for such taxation).