RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHERRY LAAKE,

          *Plaintiff-Appellee*,

    *v.*

BENEFITS COMMITTEE, WESTERN & SOUTHERN
FINANCIAL GROUP COMPANY FLEXIBLE BENEFITS
PLAN; WESTERN & SOUTHERN FINANCIAL GROUP
FLEXIBLE BENEFITS PLAN,

          *Defendants-Appellants*.

> Nos. 21-4178/22-3182

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:17-cv-00611—William O. Bertelsman, District Judge.

Argued: October 27, 2022

Decided and Filed: May 19, 2023

Before: SILER, NALBANDIAN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Wesley R. Abrams, VORYS, SATER, SEYMOUR AND PEASE LLP, Cincinnati, Ohio, for Appellants. Claire W. Bushorn Danzl, THE BUSHORN FIRM, LLC, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Wesley R. Abrams, Eric W. Richardson, VORYS, SATER, SEYMOUR AND PEASE LLP, Cincinnati, Ohio, for Appellants. Claire W. Bushorn Danzl, THE BUSHORN FIRM, LLC, Cincinnati, Ohio, for Appellee.

    SILER, J., delivered the opinion of the court in which NALBANDIAN, J., joined. READLER, J. (pp. 20–22), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

SILER, Circuit Judge.  Western & Southern Financial Group Flexible Benefits Plan (the "Plan") and the Benefits Committee of the Plan (together referred to as "W&S") appeal the district court's 2019 remand order and 2022 judgment in favor of Western & Southern Financial Group's former employee, Sherry Laake.  While W&S asserts several challenges on appeal, the central issue throughout the course of this litigation is whether Laake qualifies for long-term disability ("LTD") benefits extending beyond 24 months pursuant to the terms of the Plan—an employee welfare benefit plan as defined under the Employee Retirement Income Security Act of 1974 ("ERISA").  The district court determined that she does, and it imposed penalties against W&S and awarded Laake attorney's fees and costs.  We AFFIRM.

**I.**

W&S challenges both the district court's 2019 remand order and 2022 judgment in favor of Laake.  We address each in turn here.  Because the parties are familiar with the factual and procedural history of this case, we restate only those facts necessary to explain our decision.

**II.**

"We review de novo the decision of a district court granting judgment in an ERISA disability action based on an administrative record." *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009) (cleaned up) (citation omitted).  The default standard of review of a plan's determination is de novo unless the plan grants discretionary authority to an administrator or fiduciary to determine benefits eligibility under the plan.  *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 365 (6th Cir. 2009) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If the plan administrator is vested with discretion to determine eligibility under the plan, then we review the plan administrator's denial of benefits under the arbitrary and capricious standard.  *Id.*; *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006) ("This Court reviews a district court's judgment in an ERISA case de novo, applying the same standard of review to the

administrator's action as required by the district court." (emphasis omitted)). "Nonetheless, even when the plan documents confer discretionary authority on the plan administrator, when the benefits decision is made by a body other than the one authorized by the procedures set forth in a benefits plan, federal courts review the benefits decision de novo." *Shelby Cnty. Health Care Corp.*, 581 F.3d at 365 (cleaned up) (citation omitted).

Moreover, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018) (quoting *Firestone*, 489 U.S. at 115). The Supreme Court has held that if a plan administrator both determines a claim for benefits and pays the benefits under the claim, then this dual role creates a conflict of interest. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

With respect to the district court's 2019 remand order, both parties agree that the court properly applied the arbitrary and capricious standard of review because Laake did not challenge whether the benefits decision was made by an unauthorized body. We agree with the district court that W&S's application of the Mental Illness exclusion to Laake's claim was arbitrary and capricious. Because we also find that W&S provided Laake with improper notice when it denied her claim for extended LTD benefits, the district court properly remanded Laake's claim to W&S for it to determine, in the first instance, whether she satisfied the Plan's definition for these benefits.[1]

## A. W&S's Application of the Mental Illness Exclusion

The arbitrary and capricious standard requires courts to undertake a "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues" and uphold the plan administrator's decision "if it is the result of a deliberate, principled reasoning process and supported by substantial evidence." *DeLisle*, 558 F.3d at 444 (internal quotation

---

[1]The Plan defines LTD, extending beyond the first 24 months, as "the complete and continuous incapacity of the Covered Employee, to engage in any and every occupation, business or employment, including self employment, for wages, compensation or profit."

marks and citations omitted).  The burden is on the plan, not the claimant, to prove that an exclusion applies to deny benefits.  *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443 (6th Cir. 2005).  The district court found that W&S misapplied the Plan's Mental Illness exclusion based on the medical evidence presented before it.  We agree.

W&S failed to cite any provision of the Plan in its first denial of Laake's claim for extended LTD benefits; instead, it indicated that "[t]he Company's Long Term Disability Plan contains a provision that limits the LTD benefit to 24 months if the disabling condition is due to any mental, nervous, psychiatric condition or chronic pain."  In its appeal letter upholding the denial of these benefits, W&S cited Section 7.6(j) of the Plan and indicated that "payment of long-term disability benefits is limited to 24 months if the disability is due to chronic pain syndrome."  However, both denial letters indicated that Laake's "disabling condition" was "chronic pain," rather than "Chronic Pain Syndrome."  W&S then proceeded in federal court with the argument that Laake's disabling condition fell under Schedule C's list of exclusions under the Plan, specifically "Chronic Pain Syndrome."

However, as the district court explained, no medical doctor (up to that point) had ever diagnosed Laake with "Chronic Pain Syndrome."[2]  While there were copious notes, indications, and diagnoses of "chronic pain," no physician—including W&S's own reviewing consultant and rheumatologist, Dr. Sara Kramer—diagnosed Laake with the specific disability of "Chronic Pain Syndrome."  Moreover, Dr. Kramer found that Laake was "impaired for a reason other than pain," and she concluded that Laake had "atypical inflammatory arthritis as supported by the multiple rheumatologists she has seen" which "need[ed] to be considered in regards to long-term disability."

---

[2]Dr. Emily Muntel—Laake's rheumatologist who had been Laake's physician for several years—did diagnose Laake with Chronic Pain Syndrome on May 22, 2018.  However, this was well after W&S concluded its initial administrative procedures of Laake's claim.  Thus, this diagnosis was not part of the record W&S or the district court considered and is therefore beyond the scope of our review.  *See McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) ("When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made.").

In addition, although the Plan fails to define "Chronic Pain Syndrome," Schedule C of the Plan—which lists conditions that are excluded from extended LTD benefits—explicitly incorporates the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition ("DSM-IV"). While the DSM-IV does not specifically include "Chronic Pain Syndrome," it does detail the symptoms and features of "Pain Disorder." It then qualifies "Pain Disorder" as "Chronic" or "Acute" to specify the duration of the pain. As the district court observed, the DSM-IV indicates, as to "Pain Disorder," that "[p]sychological factors are judged to play a significant role in the onset, severity, exacerbation, or maintenance of the pain." The only subtype of "Pain Disorder" that results from a general condition and in which psychological factors are considered to play a minimal or no role "is not considered a mental disorder." Moreover, W&S's 2016 Summary Plan Description—which W&S maintains was the operative document at the time of Laake's claim—states that extended LTD benefits will not be paid if "the condition is due to any mental, nervous, or psychiatric condition except irreversible psychosis or irreversible dementia."

Consistent with these Plan-related documents, Schedule C of the Plan explicitly indicates that it is "a list of Mental Illnesses." Nevertheless, W&S focuses on the grouping of "Chronic Pain Syndrome" with "Fibromyalgia" and "Chronic Fatigue Syndrome" at the end of that list to establish that "Chronic Pain Syndrome" is not considered a mental illness under the Plan; however, that is just three terms in a list that extends almost one and a half pages and includes disabilities such as "Brief Psychotic Disorder," "Cognitive Disorders," and "Depressive Disorders." And importantly, W&S failed to ask Laake's physicians in its questionnaires about the Mental Illness exclusion or "Chronic Pain Syndrome," and W&S did not explicitly ask any of these doctors whether Laake suffered from any psychological disorders. Instead, in each of the questionnaires, W&S merely asked each doctor whether Laake satisfied the actual definition for extended LTD benefits. In response, none of her physicians indicated that there was any psychological basis for her pain. Finally, W&S specifically asked its referring physician whether Laake was disabled for a reason other than pain, and Dr. Kramer indicated there was: her arthritis. At no point did Dr. Kramer indicate that there was any psychological basis for Laake's pain.

Thus, without any explanation or supporting evidence, W&S acted arbitrarily and capriciously in finding that Laake suffered from "Chronic Pain Syndrome," thus disqualifying her from receiving extended LTD benefits.

## B.  W&S's Compliance with ERISA's Notice Requirements

The district court further held that remand was warranted as W&S deprived Laake of proper notice under ERISA in denying her claim.  ERISA requires employee benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).  In addition, the plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  *Id.* § 1133(2).

We have held that the "essential purpose" of ERISA's notice requirements is twofold: "(1) to notify the claimant of the *specific* reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed *by the fiduciary*."  *Wenner v. Sun Life Assurance Co. of Can.*, 482 F.3d 878, 882 (6th Cir. 2007).  To determine whether a plan satisfies these requirements, we apply the "substantial compliance" test.  *Id.*  Under this test, all communications between the claimant and the plan administrator are considered to determine the sufficiency of the information provided.  *Id.*  "If the communications between the administrator and participant as a whole fulfill the twin purposes of § 1133, the administrator's decision will be upheld even where the particular communication does not meet those requirements."  *Id.* (internal quotation marks and citation omitted).

In this case, the district court did not err in finding that W&S provided insufficient notice.  A plan administrator fails to comply with ERISA's notice requirements when it denies a participant's claim "for one reason, and then turn[s] around and terminat[es] [her] benefits for an entirely different and theretofore unmentioned reason, without affording [her] the opportunity to respond to the second, determinative reason for the termination."  *Id.*  In this case, W&S relied solely on the Mental Illness exclusion when it initially denied Laake's claim for extended LTD

benefits.  The administrative appeal letter upholding the denial of extended LTD benefits was the first time Laake was informed that W&S was considering whether Laake could engage in any form of employment, and even that letter is ambiguous as to whether that was the reason for the denial, as W&S still relied on the Mental Illness exclusion to limit Laake's LTD benefits.  W&S did not fully rely on the argument that Laake was disqualified from extended LTD benefits based on the definition itself, rather than the exclusion, until it was before the district court—and even still, it offered that reason "[i]n the alternative" from the Mental Illness exclusion.  Because W&S "provided notice that implied one basis for its [denial] of benefits, but then in its final decision letter included an entirely new basis," it failed to substantially comply with ERISA's notice requirements under § 1133.  *Id.* (citing *McCartha*, 419 F.3d at 446).

## C.  Remand Was Proper

Finally, W&S contends that "[t]here was no reason for the district court to remand the case," and in any event, it was a "useless formality."  "We review the district court's choice of remedy in an ERISA action for abuse of discretion."  *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 699 (6th Cir. 2014).

Here, W&S provided Laake with improper notice and arbitrarily relied on the Mental Illness exclusion.  Thus, we agree with the district court that the issue of whether Laake was entitled to extended LTD benefits remained unresolved because it is not clear whether W&S properly considered Laake's ability to work based on the Plan's extended LTD definition, rather than its exclusion.  *See Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir. 2009) ("Where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, remand to the plan administrator is the appropriate remedy." (cleaned up) (citation omitted)); *McCartha*, 419 F.3d at 444 ("If the denial notice is not in substantial compliance with § 1133, reversal and remand to the district court or to the plan administrator is ordinarily appropriate.").  Accordingly, the district court did not abuse its discretion in remanding Laake's claim to W&S to determine,

in the first instance and via proper procedures, whether Laake satisfied the Plan's definition for extended LTD benefits.[3]

**III.**

Following the district court's remand, W&S again denied Laake's claim for extended LTD benefits. Laake challenged this renewed determination before the district court, and in March 2022, the court entered judgment in Laake's favor, finding that Laake satisfied the Plan's definition for extended LTD benefits. The court further imposed statutory penalties against W&S and awarded Laake attorney's fees and costs. W&S challenges each of these determinations.

**A. Standard of Review**

In the second action before the district court, Laake argued that the Benefits *Department*, rather than the Benefits *Committee*, improperly adjudicated her claim. Because the Benefits Committee, not the Department, is granted discretionary authority under the Plan, Laake argued that W&S's second denial of her claim should be reviewed under the de novo, rather than the arbitrary and capricious, standard. The court agreed, finding that by W&S's own admissions through discovery, only two members of the Benefits Committee were present during the Benefits Department's meeting to decide Laake's claim, and the remaining individuals who reviewed her claim were members of the Benefits Department. And such representation by two members of the Benefits Committee was insufficient to form the quorum necessary—that is, a majority of the Benefits Committee's members—to transact business. Furthermore, the court found that the Plan's terms permitting the Benefits Department to "assist" the Committee did not

---

[3]Because we agree with the district court that W&S's application of the Mental Illness exclusion was arbitrary and capricious and W&S provided Laake with insufficient notice in denying her claim for extended LTD benefits, we need not determine whether the district court erred in concluding that W&S should have made two separate LTD determinations. The court found that the former two determinations "also" warranted remand, and because W&S would have had to determine on remand in the first instance whether Laake was disabled without considering the Mental Illness exclusion, we find it unnecessary to reach the latter determination. *Cf. Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) ("Thus, we believe that a remand to the district court with instructions to remand to [the administrator] for a full and fair inquiry is the proper remedy here. . . . Such a remedy will allow for a proper determination of whether, in the first instance, [the claimant] is entitled to long-term disability benefits.").

constitute an explicit delegation of voting authority from the Benefits Committee to the Benefits Department to determine Laake's claim.

We "review[] a district court's determination regarding the proper standard to apply in its review of a plan administrator's decision de novo." *Shelby Cnty. Health Care Corp.*, 581 F.3d at 364 (cleaned up) (citation omitted). "Factual findings inherent in deciding an ERISA claim are reviewed for clear error." *Id.* (citation omitted).

Here, the parties do not dispute that the Plan confers on the Benefits Committee the discretionary authority to determine eligibility for benefits. In addition, the district court did not clearly err in finding that it was the Benefits Department, not the Benefits Committee, that determined Laake's claim.[4] *See id.* As established during discovery, the Benefits Department and Benefits Committee were largely comprised of different individuals, and neither the Benefits Department nor the Benefits Appeals Committee consisted of enough Benefits Committee members to constitute the quorum required for the Benefits Committee to transact business when deciding Laake's claim on remand.

However, W&S contends that the Plan confers authority on the Benefits Committee to appoint the Benefits Department to resolve benefits claims. We "require that the plan's grant of discretionary authority to the administrator be 'express.'" *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (citation omitted). The Plan clearly grants the Benefits Committee, as opposed to the Benefits Department, the authority to administer the Plan. And while the Benefits Committee may appoint the Benefits Department "to assist in the administration of the Plan," the Department's ability to "assist" aligns more closely with the performance of a "ministerial function[]," which does not qualify as a "fiduciary function"

---

[4]W&S does not contend that regardless of whether the Benefits Department improperly made the initial denial determination, the Benefits Appeals Committee made the ultimate decision, and thus, this court should consider W&S's final decision to have been made by the Benefits Committee, as the Benefits Appeals Committee is allegedly a "subset of the Benefits Committee." Moreover, based on W&S's admissions, only three of the six Benefits Committee members reviewed and decided Laake's administrative appeal on remand. Again, such representation failed to satisfy the quorum necessary for the Benefits Committee to transact business. Because W&S merely maintains that the Benefits Department had authority to determine Laake's claims, whether by virtue of being an agent of W&S or granted discretionary authority from the Benefits Committee pursuant to the Plan, we address just those arguments here.

necessary for an explicit grant of discretionary authority. *See Walker v. Fed. Express Corp.*, 492 F. App'x 559, 565 (6th Cir. 2012); *Assist*, Merriam-Webster's Unabridged Dictionary ("to give support or aid"). Thus, we agree with the district court that the Plan does not permit the Benefits Committee to delegate its authority to resolve claims to the Benefits Department.

W&S alternatively asserts, for the first time on appeal, that delegation from the Benefits Committee to the Benefits Department was not "required because everyone involved was an agent of W&S," relying on our decisions in *Fenwick v. Hartford Life & Accident Insurance Co.*, 841 F. App'x 847 (6th Cir. 2021), and *Davis v. Hartford Life & Accident Insurance Co.*, 980 F.3d 541 (6th Cir. 2020). By failing to raise this argument before the district court, such that Laake could adequately respond and the district court could consider this issue in the first instance, W&S has waived that argument here. *See Est. of Quirk v. Comm'r*, 928 F.2d 751, 757–58 (6th Cir. 1991).

Even if we were to consider the merits of this argument, W&S's reliance on *Fenwick* and *Davis* is misplaced. In both cases, the claimants argued that another entity in the corporate family "impermissibly made the [benefits] decisions" rather than the plan administrator. *Fenwick*, 841 F. App'x at 852; *see Davis*, 980 F.3d at 545–47. We concluded otherwise in both cases; while the employees of the administrator were paid by the other entity for administrative reasons, they reviewed only the administrator's policies, displayed the same logo, and consistently signed paperwork using the administrator's name. *Fenwick*, 841 F. App'x at 852; *Davis*, 980 F.3d at 545–47.

Conversely, as W&S conceded at oral argument, the Benefits Department and Benefits Committee are two separate arms of W&S, and the Plan clearly recognizes them as such, granting them each separate and distinct functions under the Plan. By agreeing with W&S that they are functionally the same because they operate within the same corporate family, we would be disregarding the explicit terms of the Plan. *See Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595–97 (6th Cir. 2001) (holding that the district court did not err in applying de novo review based on its finding that it was the company's board of administration that was granted discretionary authority under the plan, but the company—rather than the board—rescinded the claimant's benefits). Moreover, unlike in *Fenwick* and *Davis*, in this case, W&S's denial letter

repeatedly indicated that it was the Benefits Department that reviewed and determined Laake's claim, not the Benefits Committee. The letter also does not indicate that the determination was made on behalf of the Benefits Committee. Accordingly, we reject W&S's assertion that delegation from the Benefits Committee to the Benefits Department was not required.

Having found that the Plan grants sole authority to the Benefits Committee to determine benefits claims, and the Benefits Department instead of the Benefits Committee adjudicated Laake's claim, the district court did not err in reviewing W&S's second denial of Laake's claim de novo. Therefore, we too review that denial determination de novo. *See Moore*, 458 F.3d at 427.

## B.  Proof of Laake's Claim

Pursuant to the Plan's terms, W&S may withhold payment of LTD benefits if the employee "fails or refuses to furnish proof of Long Term Disability." However, the Plan fails to define the meaning of "proof." The district court rejected W&S's apparent contention that only objective evidence was allowed to be considered under the Plan, and it considered both subjective and objective evidence. Our precedent supports this determination.

In support of its argument that the district court improperly considered Laake's subjective complaints of pain, W&S cites *Hunt v. Metropolitan Life Insurance Co.*, where we held that "requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable, even when such a requirement does not appear among the plan terms." 587 F. App'x 860, 862 (6th Cir. 2014) (cleaned up) (citation omitted). However, as the district court maintained, the issue is not whether Laake provided any objective evidence; the issue is whether her subjective complaints of pain could be considered, in addition to the objective evidence provided.

Importantly, the Plan does not require the claimant to produce only objective evidence, nor does it foreclose the consideration of subjective evidence. *See James v. Liberty Life Assurance Co. of Bos.*, 582 F. App'x 581, 589 (6th Cir 2014). Moreover, in *Helfman*, we held that refusing to consider subjective complaints is inappropriate when the terms of the policy are themselves subjective. 573 F.3d at 395. In that case, "the terms of the policy require[d] the

administrator to determine whether a particular employee is able to perform the material and substantial duties of his occupation." *Id.* We found that "[t]he fact that stress is highly subjective does not, under the terms of the policy, render it irrelevant to a determination of disability." *Id.* A similar question is presented here: whether Laake was able "to engage in any and every occupation, business or employment," and whether Laake's subjective complaints of pain should be considered. *See also James*, 582 F. App'x at 589 ("Furthermore, some aspects of [the claimant's] comorbid diagnosis are not capable of confirmation through objective indicators. Complaints of pain necessarily are subjective as they are specific to the patient and are reported by the patient."). And the fact that Laake's complaints of pain are subjective do not render them irrelevant as to whether she was disabled. *See Glenn v. MetLife*, 461 F.3d 660, 673 (6th Cir. 2006) (pointing to the absence of language in the plan indicating that "self-reported or 'subjective' factors should be accorded less significance than other indicators"), *aff'd on other grounds*, 554 U.S. 105 (2008).

Accordingly, we agree with the district court that both the subjective and objective evidence of Laake's condition may be considered.

**D.  Laake's Qualification for Extended LTD Benefits**

Finally, W&S faults the district court for "cherry-picking" through the medical records and concluding that Laake qualified for extended LTD benefits under the terms of the Plan. Ultimately, as the district court concluded, the outcome boils down to the findings of Laake's physicians on one side and those of W&S's referring physicians on the other. Under de novo review, we agree with the district court that Laake qualified for extended LTD benefits.[5]

---

[5]W&S further faults the district court for limiting its review of the record and excluding evidence submitted after the court reopened the matter in June 2020, specifically the opinion letter by Dr. Vladimir Liarski—W&S's reviewing consultant on the administrative appeal following remand—and W&S's second administrative appeal decision. The district court limited its review of the record in this manner based on its conclusion that W&S's November 14, 2019 denial letter—which was the last administrative decision before Laake moved to reopen her case—was the "final" administrative decision for the court to consider.

In response to each of W&S's questionnaires (which appear to have only been distributed during the first administrative decision), Dr. Muntel determined in 2016 that Laake was unable to work and satisfied the Plan's definition of LTD. Dr. Muntel relayed that Laake hopefully would "be able to return to at least sedentary work in the next few years." At that time, Dr. Muntel specifically diagnosed Laake with "undifferentiated inflammatory arthritis (most consistent with seronegative rheumatoid arthritis), significant osteoporosis, chronic pain, chronic fatigue, chronic recurrent pulmonary/sinus symptoms . . . , recurrent abdominal pain/vomiting, IgG subclass deficiency," with a history of aseptic meningitis and blood clots.

Dr. Angela Stillwagon—Laake's neurologist—also determined in 2016 that Laake satisfied the Plan's definition for LTD, though she determined Laake did "have the capacity to return to work at a sedentary position once her work up has been complete" and was anticipated to return to work in some capacity within three to four months. She diagnosed Laake with "[s]eronegative inflammatory arthritis, myalgias, chronic steroid use, osteoporosis," as well as back, hip, and groin pain. Dr. Jonathan Bernstein—Laake's allergist—similarly found in 2016 that Laake satisfied the LTD definition for at least the initial 24-month period and could not "work due to her severe myofascial pain syndrome and chronic inflammatory arthritis which severely limits her physical activities in and out of the workplace." He further indicated that "[d]epending on her response to treatment, it is possible she could return to work with restricted activities but this would have to be reassessed in 6 months to determine this possibility."

Notably, Dr. Muntel expressed to Dr. Kramer in 2019 that Laake "would not be able to hold down a job since she has sinus infections every couple of months causing discontinuation of her medications and exacerbation of the arthritis; especially her ankles." Further, Laake "would not be able to work for several weeks at a time until her arthritis stabilized after restarting anti-

---

The district court did not abuse its discretion by finding that Laake exhausted her administrative remedies because W&S sat on its hands for 270 days in violation of ERISA's requirement to provide an "adverse benefit determination" within "45 days after receipt of the claim," thereby permitting the court to reopen the matter before W&S completed its administrative appeals process. 29 C.F.R. § 2560.503-1(f)(3), (*l*)(2)(i); *see Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887 (6th Cir. 2020); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418–19 (6th Cir. 1998); *Winchell v. Gen. Motors Corp.*, 774 F.2d 1165 (6th Cir. 1985) (per curiam) (table). However, we need not decide whether the district court's decision to limit its review of the record was erroneous, as even considering all the evidence, we conclude that Laake satisfied the extended LTD definition at issue.

arthritis medication." Moreover, while Laake had a successful hip replacement surgery that reduced pain in her hip, "her major problem has always been in her ankles."

Both Dr. Muntel and Dr. Sandra Eisele—Laake's orthopedic physician—submitted surveys entitled "Arthritis Medical Source Statement" in 2019, and they both indicated that Laake's symptoms had lasted, or would continue to last, at least 12 months, Laake would sometimes need to take unscheduled breaks during a workday, her legs would have to be elevated during prolonged periods of sitting, and she would likely have to be absent from work more than four days per month due to her impairments or treatment if she was trying to work full time. While Dr. Eisele indicated that Laake was capable of low stress work, Dr. Muntel found that Laake was unable to tolerate such work. Both doctors indicated that Laake's symptoms would be so severe that they would impede her attention and concentration for at least 25% of a typical workday.

As to Laake's upper body limitations, while Dr. Kramer found that Laake was not restricted in the use of her hands, Laake herself reported several issues with pain in her hands, wrists, and shoulder throughout the period at issue. Dr. Muntel also reported pain and tenderness in Laake's fingers, shoulders, and wrists. Moreover, Dr. Muntel diagnosed Laake with "subdeltoid bursitis" of the right shoulder in 2017. Dr. Kramer also recognized that Laake "required steroid injections to [her] ankles, elbows and hips." In addition, Dr. Kramer concluded that Laake could lift and carry only negligible amounts, could not climb stairs or ladders, and is limited in standing and walking to 15 minutes at a time for up to one hour over an eight-hour workday.

W&S concluded that the objective medical evidence established that Laake could perform at least sedentary work, and it contends here that even Laake's treating physicians concluded similarly. The term "sedentary work" is undefined in the Plan and W&S's denial letters. Accordingly, the district court looked to Department of Labor ("DOL") guidance, as adopted by the regulations set forth by the Social Security Administration, for the definition of "sedentary work." We have similarly taken judicial notice of the DOL definition of "sedentary work" in an ERISA action. *See Evans v. Metro. Life Ins. Co.*, 190 F. App'x 429, 436 n.7 (6th Cir. 2006). While W&S objects to the district court's reliance on these regulations, its own

expert—Dr. Liarski—cited "DOL guidelines" when determining that Laake's job at W&S was "consistent with a sedentary-level occupation."

Under these regulations, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). We have acknowledged that this may mean standing or walking for two hours or up to one-third of a workday. *See Creech v. UNUM Life Ins. Co. of N. Am.*, 162 F. App'x 445, 451 n.10 (6th Cir. 2006); *Wages v. Sec'y of Health and Hum. Servs.*, 755 F.2d 495, 498 (6th Cir. 1985). W&S fails to offer a competing definition. And while Dr. Liarski concluded summarily that Laake could stand and walk occasionally, Dr. Kramer found that Laake was limited to standing and walking for up to only one hour during an eight-hour workday.

We are also mindful of the district court's finding that W&S engaged in particularly "egregious conduct throughout the course of this litigation" and its "potential" conflict of interest in this matter, which may have impacted Laake's benefits determination. *See Gilewski v. Provident Life & Accident Ins. Co.*, 683 F. App'x 399, 408–09 (6th Cir. 2017) (addressing the defendant's conflict of interest on de novo review); *cf. Glenn*, 554 U.S. at 112. Ultimately, given the weight of the evidence from Laake's treating physicians—not just those who reviewed her file, *see Javery*, 741 F.3d at 701–02—we affirm the district court's finding that Laake satisfied the Plan's definition for extended LTD benefits and its award of back pay and benefits.

## IV.

W&S also challenges the district court's imposition of statutory penalties under 29 U.S.C. § 1132(c). We review a district court's award of statutory penalties under ERISA for an abuse of discretion. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). We review "[a]ny accompanying findings of fact under the clear-error standard." *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706 (6th Cir. 2014).

W&S first claims that Laake failed to timely move for statutory penalties. The district court found that Laake's motion for summary judgment, which included her request for statutory penalties, was untimely. However, the court considered the claim for statutory penalties pursuant to Rule 52(a) of the Federal Rules of Civil Procedure because W&S moved for judgment in its favor on the statutory penalties claim. On appeal, W&S provides no legal rationale for reversing the district court on this basis. Accordingly, we turn to the merits of the court's decision to impose penalties.

"ERISA provides that retirement plan documents must be provided to beneficiaries on their request." *Gatlin v. Nat'l Healthcare Corp.*, 16 F. App'x 283, 289 (6th Cir. 2001) (citing 29 U.S.C. § 1024(b)(4)). If a plan administrator fails to provide the material within 30 days of the request, the court may in its discretion impose a penalty of up to $110 per day from the date of such failure. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. Here, the district court determined that Laake properly submitted her request for documents on November 18, 2019, when Laake's counsel wrote a letter and made "a formal request for all documents 'relevant' to W&S's denial of . . . Laake's claims." That letter then set forth the definition of "relevant" under ERISA's regulations and specified the scope of what Laake considered to be a "proper response." While the court found that Laake was "not entitled to the administrative record she [sought]," her request "clearly show[ed] that she sought documentation that showed the 'currently operative, governing Plan documents,' all of which are 'instruments under which the plan is established or operated' per § 1024(b)(4)." Despite W&S's response on November 22, 2019, indicating that it would provide Laake with the requested documents, the court found that W&S did not provide the Plan documentation, specifically the Plan, Summary Plan Documents, and the Trust Agreement, to Laake until February 6, 2020, and September 10, 2020, well outside the statutory 30 days for compliance, and it imposed the maximum penalty of $110 per day for the delay.

W&S failed to respond to Laake with any of the requested documents until February 6, 2020, even though she sent her request on November 18, 2019.  Laake's counsel then raised the issue that documents appeared to be missing, and on March 18, 2020, W&S indicated it would be providing Laake and her counsel with additional materials.  However, the court found that W&S did not fully produce the requested information until September 10, 2020, a date W&S does not dispute.  Instead, W&S argues that it lacked "clear notice" of the documents Laake sought, and that, in any event, the delay was "inadvertent" and Laake did not suffer prejudice.

The district court largely focused on W&S's failure to provide the 2019 Summary Plan Description and the Trust Agreement.  W&S maintains that it was not on "clear notice" that Laake's request for all "relevant" documents included these materials, asserting that the 2019 Summary Plan Description is irrelevant as it was not controlling for the determination of Laake's claim and the Trust Agreement does not discuss LTD claims.  *See Cultrona*, 748 F.3d at 707 ("[T]he key question under the clear-notice standard is whether the plan administrator knew or should have known which documents were being requested.").  However, as an initial matter, the district court penalized W&S for its initial delay in providing "the Plan and Summary Plan Documents," not just the 2019 Summary Plan Description.  And W&S admitted that these were the documents that it found to be "relevant to . . . Laake's claim."  *Cf. id.* ("We further note that a plan administrator is free to place the burden of clarity squarely on the requester simply by replying to an ambiguous demand for § 1024(b)(4) documents with the administrator's own request for greater specificity.").  Arguing before us now that these documents are irrelevant amounts merely to a post-litigation rationalization, as these are the exact documents W&S found to be relevant—and sufficiently on notice to provide—in the first instance.

Moreover, W&S maintained that it would be providing Laake with additional documents but failed to provide Laake with the Trust Agreement until September 10, 2020.  Despite W&S's assertion that the Trust Agreement is not relevant to LTD claims, the Trust Agreement and the Plan explicitly cross-reference each other, thereby incorporating the Trust Agreement as part of the Plan.  Laake also asserts that the Trust Agreement raises an additional question of whether another entity is authorized to decide benefits claims.  Thus, given the ties between the Trust Agreement and the Plan, W&S "knew or should have known" that it was on notice to provide the

Trust Agreement. *See id.* Accordingly, the district court did not abuse its discretion by determining that W&S failed to timely provide the Plan, Summary Plan Documents, and Trust Agreement.[6]

The district court also found that W&S's delays and lack of production prejudiced Laake, and it took note of W&S's "severe negligence in providing" the requested documentation. *See Ciaramitaro v. Unum Life Ins. Co. of Am.*, 628 F. App'x 410, 417–18 (6th Cir. 2015). While W&S takes issue with this finding, district courts may consider bad faith and prejudice in imposing penalties under ERISA, and we find no error in the district court's consideration of these factors—in Laake's favor—here. *See id.*

Accordingly, the district court did not abuse its discretion in imposing statutory penalties against W&S.

## V.

Finally, the district court awarded Laake attorney's fees and costs. ERISA provides that a district court may award either party reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(1). We review a district court's award of attorney's fees in an ERISA matter for an abuse of discretion, *Shelby Cnty. Health Care Corp.*, 581 F.3d at 376, and we consider several factors to determine whether a district court abused its discretion in awarding such fees, *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010); *Shelby Cnty. Health Care Corp.*, 581 F.3d at 376; *see also Wallace*, 954 F.3d at 899. W&S merely challenges the district court's conclusion that the factors weigh in Laake's favor. Based on our review of the record and given the district court's careful application of each pertinent factor, the court did not abuse its

---

[6]To be clear, requests for all "relevant" documents may not in every case put an administrator or insurer on "clear notice" to provide the documents required under § 1024(b)(4). However, based on the circumstances in this case, the district court did not err in finding that W&S was on "clear notice" to provide the Plan, Summary Plan Documents, and the Trust Agreement, which were the sole bases for the imposition of the statutory penalties. *See Cultrona*, 748 F.3d at 706–08 (finding that "the district court did not abuse its discretion in concluding that the [administrator] knew or should have known" that the document at issue was covered by the request, despite recognizing that the claimant's "broadly worded document request" "would not pass the clear-notice test for most of the documents identified in . . . § 1024(b)(4)").

discretion in awarding Laake attorney's fees and costs.  *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 962 (6th Cir. 2014).

AFFIRMED.

———————————————————————

**CONCURRENCE AND DISSENT**

———————————————————————

CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part.  As plan administrator, Western & Southern deserved deference in determining whether Sherry Laake was entitled to a benefits award.  The district court should have applied arbitrary and capricious review, and, on that basis, should have affirmed W&S's second decision denying those benefits.  On this point, my view differs from that of the majority opinion.  I concur, however, as to its resolution of the statutory penalties and attorneys' fees.

A. All agree on the general framework under which we examine an ERISA plan administrator's decision.  The default standard is de novo review.  *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 545 (6th Cir. 2020).  We shift to an "extremely deferential" arbitrary and capricious standard when the plan grants the administrator discretion to determine benefit eligibility.  *Id.* at 545, 547 (quoting *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)).  But we switch back to de novo review if someone "other than the authorized administrator" actually makes the benefits decision.  *Id.* at 545 (citing *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009)).

So which standard applies here?  To my mind, both facts and law point to deference.  Beginning with the facts, we are again of one mind.  The plan vested discretion to determine coverage in a Benefits Committee, including the ability to solicit "assist[ance]" from a separate Benefits Department and "any individuals" with its administrative responsibilities.  Twelve individuals met to decide Laake's claim.  Two were members of the Benefits Committee.  The rest worked for the Benefits Department.  In short, all who participated in the benefits determination were either members of the Benefits Committee or individuals authorized to assist that Committee in making benefits determinations.

Turning, then, to the law, our precedent commands that we afford deference to W&S's determination.  Two decisions confirm as much.  *Davis*, 980 F.3d at 545–47; *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 852 (6th Cir. 2021).  *Davis* and *Fenwick*

both involved the same insurer, Hartford Life, and its sister company, Hartford Fire Insurance Company, under a single corporate umbrella. *Davis*, 980 F.3d at 546; *Fenwick*, 841 F. App'x at 852. In the benefits plan at issue, Hartford Life was the designated benefits administrator. The employees making benefits determinations, however, were paid and employed by Hartford Fire, not Hartford Life. *Davis*, 980 F.3d at 546; *Fenwick*, 841 F. App'x at 852. That arrangement, we agreed, did not alter Hartford Life's status as the benefits decisionmaker for ERISA purposes. *Davis*, 980 F.3d at 546; *Fenwick*, 841 F. App'x at 852. Rather, as a matter of law, an authorized administrator continues to exercise its authority under a plan even when the actual decisionmaker acting on the administrator's behalf is employed by another entity within the same corporate family. *Davis*, 980 F.3d at 547 (citation omitted); *Fenwick*, 841 F. App'x at 852. Like any other business, after all, insurers operate through their employees and agents. *Davis*, 980 F.3d at 546.

So too for W&S. Every employee who reviewed Laake's claim was employed by the same corporate family—indeed, the same company. That alone should be dispositive. Add in the fact that, unlike in *Davis* and *Fenwick*, the plan itself expressly provided for the participation of the related entity, here the Benefits Department, and today's outcome is straightforward: we apply arbitrary and capricious review to the benefits denial at issue.

The majority opinion sees things differently. To begin, it says that W&S waived this argument. But W&S's response to Laake's motion for judgment on the administrative record addressed at length whether the authorized administrator decided her claim, preserving the issue for appeal. *See Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022).

Next, the majority opinion attempts to distinguish *Davis* and *Fenwick*. True, both *Davis* and *Fenwick* arose out of a factual setting where the Hartford Fire employees' actions were seemingly identical to work done by Hartford Life itself. *Davis*, 980 F.3d at 546; *Fenwick*, 841 F. App'x at 852. And here, I acknowledge, the Benefits Department employees were not Benefits Committee members. That said, the legal principle still abides: when an employee within the same corporate family (here, in fact, the same company) acts as the agent of the plan administrator to which discretionary authority is conferred, the ERISA standard of review remains the same.

*Sanford v. Harvard Industries* does not say otherwise.  262 F.3d 590 (6th Cir. 2001).  The *Sanford* plan, part of a collective bargaining agreement between a company and a union, vested an independent six-member board with discretionary authority to grant or deny benefits.  *Id.* at 592, 595.  Half of the board's members were appointed by the employer, the other half by the union.  *Id.* at 595.  So when the employer overturned the board's decision granting early retirement benefits to Sanford, *id.* at 593, we held that the employer's determination was undeserving of deference, as the employer failed to comply with the plan's written procedures. *Id.* at 596–97.  But that was so because the six-member board alone (not the employer) was entrusted with benefits decisions.  Laake's plan, on the other hand, contemplated participation by a broader audience in benefits determinations.  It instructs that Benefits Department members and "any [other] individuals" could "assist" with the Benefits Committee's work.  Nor, unlike in *Davis*, *Fenwick*, and here, were all individuals charged with making benefits determinations within the administrator's corporate umbrella.  980 F.3d at 547.  In *Sanford*, remember, the administrator—a mixed-member board—was not the company itself.  Sanford's collective bargaining agreement, in other words, ensured some protection for him in benefits decisions through the presence of union representatives.  But as to W&S, there is no practical reason to distinguish between two entities within the same company.

B.  Viewed through the deferential lens of arbitrary and capricious review, Laake's denial of benefits should have been affirmed by the district court.  Under that benchmark, a plan administrator's decision stands if it is the "result of a deliberate, principled reasoning process" and is "supported by substantial evidence." *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022) (citation omitted).  W&S grounded its second denial of benefits in medical opinions and diagnostic evidence suggesting that Laake was not totally disabled.  No procedural defects in that process have been identified. *See id.* at 412 (listing relevant criteria).  And a rational person would find the evidence "adequate" to justify denial. *See id.* (quoting *Davis*, 980 F.3d at 549).  Laake, in sum, was ineligible for benefits, as she did not meet the disability threshold.